**Roger and Sue MELTON, individually and as next friends of their son, Jason Melton, and Advocacy, Incorporated, Plaintiffs,**

v.

**DALLAS AREA RAPID TRANSIT, Defendant.**

No. CA 3:02–CV–0236–R.

United States District Court, N.D. Texas, Dallas Division.

Nov. 25, 2003.

Laurance L. Priddy, Advocacy Inc., Dallas, TX, Elise Mitchell, Advocacy Inc., Fort Worth, TX, for Plaintiffs.

Harold R. McKeever, Roland Casteneda, Dallas Area Rapid Transit, Legal Dept., Dallas, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCHMEYER, Senior District Judge.

Before the Court is Dallas Area Rapid Transit's ("Defendant" or "DART") Motion for Summary Judgment and Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs Roger and Sue Melton, individually and as next friends of their son, Jason Melton, and Advocacy, Incorporated ("Plaintiffs") filed this suit against DART for violations of title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132, *et. seq.* ("ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"). Jason Melton ("Jason") is an individual with a disability. Plaintiffs claim that DART's discontinuance of paratransit-service pickups via Plaintiffs' alley constitutes discrimination on the basis of Jason's disability. Plaintiffs also claim that DART failed to make reasonable modifications to their service plan to accommodate Jason's disability in violation of the ADA. Plaintiffs request injunctive relief, declaratory relief, and attorneys' fees.

For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Motion for Partial Summary Judgment is **DENIED**.

## I. FACTUAL BACKGROUND

Due to injuries sustained in 1982, Jason requires the use of a wheelchair and the daytime assistance of an attendant. Jason lives in Dallas with his parents, who have modified their home to accommodate Jason's special needs. Plaintiffs' house sits approximately six feet above the street on which it is located, and the resultant slope prevents Jason from using the front entrance to gain street access. In addition to other modifications, Plaintiffs have built a ramp in their garage which enables Jason to access the rear driveway and the alley behind the house. Jason regularly travels to the Bachman Recreation Center, which provides his principal opportunity for instruction and socialization outside the home. For these trips, Jason requires both the assistance of an attendant and the use of paratransit services. Jason's injuries make him sensitive to extreme temperatures.

DART, a regional transportation authority that receives federal funding, operates a "fixed route system" of public transportation with complementary paratransit services. DART's paratransit system is a curb-to-curb, shared-ride program for people with disabilities who are unable to use DART buses or trains. It also provides some limited door-to-door service. According to DART's "A Guide to Paratransit Services," riders must be "waiting at the sidewalk, or at another safe waiting area in front of, or as close as possible to, the entrance of the pick-up location. Operators will wait for a rider at the curb of a public street, in front of, or as close as possible to, the rider's house, building, or other designated pick-up location." The rider must travel to the pickup location. DART's program does not include pickups in alleyways, and it has been approved by the Federal Transit Administration as compliant with title II of the ADA and the Rehabilitation Act.

From 1992 through early 1999, DART provided Jason with paratransit service, which included picking him up in the paved public alley behind Plaintiffs' house. In June of 1999, DART received a complaint about paratransit vans picking up a rider in an alley behind his house. After learning that some contract drivers for DART were picking up riders in alley ways, DART examined its service plan and the safety hazards associated with alley pickups. DART concluded that safety con-

cerns precluded its continuance of alleyway pickups and that DART would strictly enforce its curb-to-curb policy. It is disputed whether safety concerns indeed justify the cessation of alleyway pickups. In 1999, after DART discontinued its practice of alley-way pickups, another paratransit rider filed a "Title II of the Americans with Disabilities Act/Section 504 of the Rehabilitation Act of 1973 Discrimination Complaint Form" over DART's decision to enforce its curb-to-curb program. The Civil Rights Office of the Federal Transit Authority responded to the complaint by supporting Defendant's discontinuance of alleyway pickups. Specifically, DART's actions with regard to delivery of ADA complementary paratransit service was found not to be deficient.

DART paratransit vehicles arrive for a pickup at any time within at 20–minute "ready-time" window, and vehicles are to leave after waiting five minutes for the passenger. DART issues riders who fail to appear for a scheduled pickup with "No–Show" violations. Passengers who receive three No–Shows within a 30–day period will receive a service suspension of 30 days. DART's curb-to-curb program requires that Jason be picked up at the entrance to the alley, approximately one block away from his home. Jason must be transported to the end of the alley to be picked up in a variety of weather conditions.

## II. ANALYSIS

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment only when the moving party demonstrates that there is no genuine issue as to any material fact and the party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Melton v. Teachers Ins. & Annuity Assoc. of Am.,* 114 F.3d 557, 559 (5th Cir.1997). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

Once the movant has discharged its initial burden under Rule 56, the nonmovant must set forth specific facts, by affidavits or otherwise, that show a genuine issue for trial. *See Topalian v. Ehrman,* 954 F.2d 1125, 1132 (5th Cir.1992), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). In weighing the evidence, the court must decide all reasonable doubts and inferences in the light most favorable to the nonmovant. *See Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988); *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 640 (5th Cir.1985). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment for the defendant will be granted if the plaintiff fails to make a showing sufficient to establish a material issue of fact as to the existence of an element essential to its case. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

### B. Plaintiffs' ADA Claims

Plaintiffs first advance claims of discrimination on the basis of disability under title II of the ADA. Plaintiffs contend both that Jason was discriminated against and that DART unlawfully failed to make reason-

able modifications of its paratransit system.

To establish a prima facie case of discrimination under title II of the ADA, Plaintiffs must prove: (1) that Jason is a qualified individual under the Act; (2) that Jason is being excluded from participation in, or being denied benefits of, services, programs, or activities for which Defendant is responsible, or otherwise is being discriminated against by DART; and (3) that such exclusion, denial of benefits, or discrimination is by reason of Jason's disability. *Lightbourn v. County of El Paso, Texas,* 118 F.3d 421, 428 (5th Cir.1997). Jason is a qualified individual under the ADA. Under the second prong, no genuine issue of material fact remains. Plaintiffs have failed to show that Jason has been excluded from participation in, or is being denied the benefits of DART paratransit service. Although alleyway pickups have ceased, DART has not excluded Jason from participation in the paratransit program, and he has not been denied paratransit services. Rather, Plaintiffs claim that alleyway pickups constitute a reasonable modification to paratransit service provision that DART should be required to undertake. Defendant is entitled to summary judgment as to Plaintiffs' ADA claim of discrimination.

While Plaintiffs maintain that DART's paratransit system generally complies with the ADA, Plaintiffs contend that DART's failure to make reasonable modifications to their paratransit plan to allow alleyway pickups constitutes discrimination on the basis of Jason's disability. This argument hinges on whether 28 C.F.R. § 35.130(b)(7), which requires that public entities make reasonable modifications to policies when necessary to avoid discrimination on the basis of disability, unless the public entity demonstrates that the modifications would fundamentally alter the nature of the service, applies to DART's provision of paratransit services. Plaintiffs claim that 28 C.F.R. § 35.102(b) indicates that because subtitle B of title II of the ADA fails to mention reasonable modifications, the reasonable modifications provision of subtitle A, 28 C.F.R. § 35.130(b)(7), controls. It states:

> To the extent that public transportation services, programs, and activities of public entities are covered by subtitle B of title II of the ADA (42 U.S.C. 12141), they are not subject to the requirements of this part.

Subtitle B of title II of the ADA explicitly covers the provision of paratransit services, and paratransit services are subject to the regulation of the Department of Transportation at 49 C.F.R. part 37. Section–by–Section Analysis, app. A to pt. 35 at § 35.102. The requirement of reasonable modifications, however, appears only in subtitle A. "It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). In this case, statutory language requiring reasonable modifications appears in subtitle A, but not subtitle B, of title II of the ADA.

Generally, DART must provide individuals with disabilities with service comparable to that of designated public transportation services provided to individuals without disabilities. 42 U.S.C. § 12143(a). DART may lawfully opt to provide a higher level of paratransit services than that required by subtitle B of title II of the ADA, but it is not required to do so. 42 U.S.C. § 12143(f)(1). Notably, Congress instructed that title II's transportation regulations are to "establish minimum service criteria." 42 U.S.C. § 12143. Even if the intent of Congress remained un-

clear, as Plaintiffs argue, the court must determine whether an administrative agency's interpretation is based on a permissible construction of the statutes at issue. *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). DART forwarded a complaint it received regarding its discontinuance of alleyway pickups to the Department of Transportation's Federal Transit Administration. It found DART's actions with respect to paratransit services in compliance with the ADA. Although this response by the Federal Transit Administration to a single, relevant complaint does not warrant *Chevron*-style deference, it holds persuasive power. *Henrikson v. Guzik,* 249 F.3d 395, 398 (5th Cir.2001). But this court need not go so far as to examine the reasonable modifications provision in this way. Subtitle B of title II provides Plaintiffs with no claim for a reasonable modification. Defendant is granted summary judgment as to Plaintiffs' claim that DART unlawfully failed to make reasonable modifications to its paratransit program.

## C. Plaintiffs' Rehabilitation Act Claims

■■ The language of title II of the ADA generally tracks the language of section 504 of the Rehabilitation Act, and it was intended to extend the Rehabilitation Act to cover all state and local programs. *Hainze v. Richards,* 207 F.3d 795, 799 (5th Cir.2000), *reh'g en banc denied,* 216 F.3d 1081 (5th Cir.2000), *cert. denied,* 531 U.S. 959, 121 S.Ct. 384, 148 L.Ed.2d 296 (2000). As such, "the 'remedies, procedures, and rights' available under Section 504 shall be the same as those available under Title II." *Id.* A prima facie case of discrimination under Section 504 of the Rehabilitation Act requires that Plaintiffs show: (1) that Jason is a qualified individual with a disability; (2) that Jason was excluded from participation in, denied benefits of, or subjected to discrimination under Defendant's paratransit program solely because of his disability; and (3) that Defendant's paratransit system receives federal financial assistance. 29 U.S.C. § 794(a). Jason is a qualified individual under the Rehabilitation Act, and DART receives federal financial assistance. At issue is whether DART discriminated against Jason on the basis of his disability. As with the title II claim, Plaintiffs have failed to demonstrate that DART has discriminated against Jason by reason of his disability.

Again, Plaintiffs argue that DART's failure to make reasonable modifications to their current paratransit plan constitutes discrimination on the basis of disability. To comply with the Rehabilitation Act and continue to receive federal financial assistance, DART must comply with the ADA. 49 C.F.R. 37.21(b). Because the relevant statutes of the ADA contain no reasonable modifications provision, this claim fails as a matter of law as it applies to the Rehabilitation Act.

There are no genuine issues of material fact relating to these claims, and Defendant's Motion for Summary Judgment is granted as to Plaintiffs' Rehabilitation Act claims.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiffs' Motion for Partial Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**