**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**November 19, 2004**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-10043
_____

ROGER MELTON, Individually and as next friend of his son, Jason Melton; SUE MELTON, Individually and as next friend of her son, Jason Melton; ADVOCACY, INCORPORATED,

                                        Plaintiffs - Appellants,

                    versus

DALLAS AREA RAPID TRANSIT,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

Before GARWOOD, JOLLY and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Between 1992 and early 1999, Dallas Area Rapid Transit's paratransit service picked up the disabled Jason Melton in the alley directly behind his house. Dallas Area Rapid Transit ("DART") discontinued this practice in early 1999, citing safety concerns. Since 1999, DART has picked up Jason where the alley meets the street, approximately one block away from the house. Plaintiffs-appellants Roger and Sue Melton, as next friends of their disabled adult son Jason Melton, and Advocacy, Incorporated (collectively the "Meltons") seek an injunction requiring

1

defendant-appellee DART to make "reasonable modification" to its paratransit services to require alley pick-up for Jason, contending that the failure to modify its plan is in violation of title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, et. seq., and section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794, et. seq.. We hold that DART is not required by the ADA or the Rehabilitation Act to make reasonable modification to its paratransit services. This holding means that the Meltons have failed to establish a prima facie case of discrimination under either the ADA or the Rehabilitation Act, and we thus affirm the judgment of the district court.

I

Jason Melton is a disabled individual who qualifies for DART's paratransit services. The front yard of the Melton home, in which Jason lives with his parents, includes a steep slope that prevents the Meltons from taking Jason down to the street in his wheelchair. Instead, the Meltons have constructed a ramp in their garage to allow Jason access to the rear drive and paved public alley.

Although DART's paratransit service previously had picked up Jason in the alley directly behind the house, DART has picked up Jason where the alley meets the street since 1999. The Meltons cite numerous health, safety, and convenience concerns resulting from the pick-up's relocation to the end of the alley.

DART's current paratransit plan -- which is approved as compliant with title II of the ADA by the Federal Transit

2

Administration ("FTA") -- provides curb-to-curb, shared-ride service for people with disabilities who are unable to use DART's fixed route system of buses or trains. DART's "Guide to Paratransit Service" provides that riders using the system must wait at the sidewalk, or at another safe waiting area in front of, or as close as possible to, the entrance of the pick-up location. The rider is responsible for travel to the pick-up location; that is to say, DART has no responsibility under the plan to get the rider to the point of pick-up. Paratransit drivers are instructed to wait for riders at the curb of a public street, in front of, or as close as possible to, the rider's house, building or other designated pick-up location.

On February 5, 2002, the Meltons filed this action against DART, contending that DART's refusal to pick up Jason in the alley directly behind his house constituted illegal discrimination against Jason under the ADA and the Rehabilitation Act. They sought an injunction requiring DART to make "reasonable modification" to its paratransit services to provide an alleyway pick-up for Jason.

DART moved for summary judgment arguing that the law does not require it to make reasonable modification to its paratransit service. The Meltons concurrently filed an opposing motion for partial summary judgment. The district court granted DART's motion for summary judgment and denied the Meltons' motion for partial summary judgment, holding that neither the ADA nor the

Rehabilitation Act required DART to make reasonable modification to its paratransit service. Melton v. Dallas Area Rapid Transit, 326 F.Supp.2d 767 (N.D. Tex. 2003). The Meltons filed a timely motion for a new trial, which was effectively a motion to alter or amend the judgment pursuant to FED. R. CIV. P. 59(e). The district court denied this motion, and the Meltons filed a timely notice of appeal.

II

This court reviews a district court's order granting a party's summary judgment motion de novo. Whittaker v. BellSouth Telecomm., Inc., 206 F.3d 532, 534 (5th Cir. 2000). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In making this determination, the court must evaluate the facts in the light most favorable to the nonmoving party. Whittaker, 206 F.3d at 534.

4

The Americans with Disabilities Act[1], 42 U.S.C. §§ 12101, et. seq., was passed by Congress with the specific mandate of eliminating discrimination against individuals with disabilities. See 42 U.S.C. § 12101(b)(1). The focus of this case is title II of the ADA, which covers discrimination in the provision of public services. See 42 U.S.C. §§ 12131, et. seq. Title II is divided into two parts: part A covers public services generally, 42 U.S.C. §§ 12131, et. seq.; part B applies specifically and only to public transportation provided by public entities, 42 U.S.C. §§ 12141, et. seq.. It is undisputed that DART's paratransit service is covered by part B of title II; the parties dispute the application of part A to the issue presented in this case.

A plaintiff must first establish a prima facie case of discrimination before relief under the ADA can be considered. To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is

---

[1]The Meltons also raise a claim under section 504 of the Rehabilitation Act. 29 U.S.C. § 794(a). The Rehabilitation Act claim is discussed in Section II(C) of this opinion; however, the following discussion relating specifically to the ADA is also applicable to the Rehabilitation Act. Jurispridence interpreting either section is applicable to both title II of the ADA and section 504 of the Rehabilitation Act. See Hainze v. Richards, 207 F.3d 795, 799 (5th Cir.), cert. denied, 531 U.S. 959 (2000).

otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability. Lightbourn v. County of El Paso, Texas, 118 F.3d 421, 428 (5th Cir. 1997).

The parties agree that Jason Melton is a qualified individual within the meaning of the ADA. The second element of the prima facie case, however, is a point of contention. The district court concluded, and DART argues on appeal, that the Meltons failed to show that Jason has been excluded from participation in, or is being denied the benefits of, DART's paratransit service. See Melton, 326 F.Supp.2d at 771. Although Jason has not been entirely prohibited from using DART's paratransit service, the Meltons argue that Jason has been denied "meaningful access" because the discontinuation of alleyway pick-ups makes his use of the system dangerous and extremely difficult. The Meltons assert that the district court erred by not applying a "meaningful access" standard to evaluate the Meltons' claims of denial of access. Although Supreme Court precedent suggests that denial of "meaningful access" is equivalent to a full denial of access under the ADA[2], we need

---

[2]See Alexander v. Choate, 469 U.S. 287, 301 (1983) (stating in the context of the Rehabilitation Act that a benefit cannot be offered in a way that "effectively denies" otherwise qualified handicapped individuals to "meaningful access" to which they are entitled); see also Brennan v. Stewart, 834 F.2d 1248, 1261 (5th Cir. 1988). Although this circuit has not addressed this issue under the ADA, other circuits have extended Alexander's "meaningful access" standard to the ADA. See, e.g., Jones v. City of Monroe, Mich., 341 F.3d 474, 479-80 (6th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001).

not decide whether the "meaningful access" standard should be applied here; the district court's application of an incorrect standard of access is not reversible error unless the Meltons also demonstrate discrimination on the basis of Jason's disability, the third element of the prima facie case.

Thus, we turn to the question of whether the failure of DART to modify its plan constituted discrimination prohibited by the ADA and the Rehabilitation Act. Discrimination on the basis of disability differs from discrimination in the constitutional sense. Reickenbacker v. Foster, 274 F.3d 974, 981 (5th Cir. 2001) (citing Thompson v. Colorado, 258 F.3d 1241, 1254 (10th Cir. 2001)). To determine whether DART discriminated against Jason on the basis of his disability, we examine the ADA itself and its own definitions of discrimination.[3] If the ADA requires reasonable modification of DART's paratransit plan, the Meltons may have stated a prima facie case of discrimination and in which case we assume that summary judgment in favor of DART would be inappropriate. On the other hand, if the ADA imposes no such requirement, as we hold, the Meltons have failed to establish a prima facie case and summary judgment is appropriately granted to DART.

---

[3]The Meltons also argue that DART's refusal to perform alleyway pickups constitutes "other discrimination" under the second element of the prima facie case. This argument need not be addressed separately because it requires the same legal analysis as determining whether DART discriminated against Jason on the basis of his disability under the third element of the prima facie case. Both require this Court to determine what constitutes discrimination in the context of the ADA.

We now turn to the question at the heart of this case: whether a paratransit service that is consistent with an FTA-approved plan is sufficient for compliance with the ADA, or whether the ADA requires a public transportation system to make reasonable modifications to its paratransit service. This difficult question is an issue of first impression not only for our Court, but for all circuits. A proper analysis requires an examination of both the statutory and regulatory frameworks of the ADA.

As we have noted above, title II of the ADA is divided into two subparts. Part A governs all public entities, and part B applies specifically to the provision of public transportation by public entities. 42 U.S.C. §§ 12131-12134; 42 U.S.C. §§ 12141-12150. The Attorney General is directed to promulgate regulations to implement part A under 42 U.S.C. § 12134. But, it is the Secretary of Transportation who is directed to promulgate regulations to implement part B under 42 U.S.C. § 12149 and specifically to promulgate regulations regarding paratransit service under 42 U.S.C. § 12143(b).

DART argues that the ADA does not require reasonable modifications of paratransit service, although it acknowledges that public entities generally are required by 28 C.F.R. § 35.130(b)(7) to make reasonable modifications to avoid discrimination on the basis of disability:

> A public entity shall make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

Part B, however, is explicitly excepted from the reasonable modifications requirement:

> To the extent that public transportation services, programs, and activities of public entities are covered by subtitle B of title II of the ADA (42 U.S.C. 12141), they are not subject to the requirements of this part.

29 C.F.R. § 35.102(b). Thus, DART argues that because paratransit services are covered by part B, they are not subject to regulations promulgated by the Attorney General under 28 C.F.R. part 35. Instead, paratransit services are subject only to Department of Transportation regulations found in 49 C.F.R. part 37. The Department of Transportation regulations contain no analogous provision requiring reasonable modification to be made to paratransit services to avoid discrimination.

Aside from these regulations, DART further argues that the statute itself does not require reasonable modification. DART contends that because paratransit services are not intended to be a comprehensive system of transportation to meet the needs of individuals with disabilities, a modification provision is inappropriate. The purpose of paratransit service is to provide service to individuals with disabilities comparable to the level of

9

public transportation services provided to non-disabled individuals. 42 U.S.C. § 12143(a). DART argues that the FTA review of the paratransit plan stands in the place of any reasonable modification requirement for determining compliance with the ADA. This is true because the FTA evaluates whether the plan meets the ADA's stated requirement of service comparable to the entity's fixed route service. 49 C.F.R. § 37.147(d).

On the other hand, the Meltons argue that both the regulations and the statutory language require DART to make reasonable modifications to its paratransit service. The Meltons interpret 28 C.F.R. § 35.102(b) as applying the Attorney General's, as well as the Secretary of Transportation's, regulations to transportation services <u>except</u> where a conflict arises between the two. Relying on references to modification in both congressional findings reflected in the statute[4] and the definitions in 42 U.S.C. § 12131(2)[5], the Meltons argue that the requirement of reasonable modifications should be understood to cover both part A and part B of title II. Because part A is a general provision and part B

---

[4]"Individuals with disabilities continually encounter various forms of discrimination, including . . . <u>failure to make modifications to existing facilities and practice</u> . . . ." 42 U.S.C. § 12101(a)(5) (emphasis added).

[5]"The term 'qualified individual with a disability' means an individual with a disability who, <u>with or without reasonable modifications</u> to rules, policies, or practices . . . meets the essential eligibility requirements for receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2) (emphasis added). This definition applies to terms used in title II.

provides specific examples of discrimination and remedies in the public transportation context, the Meltons assert that nothing in part B demonstrates congressional intent to exempt providers of public transportation from general requirements under part A.[6] Furthermore, the Meltons assert that the regulations themselves acknowledge that 28 C.F.R. part 35 applies to part B:

> Entities to which this part applies also may be subject to ADA regulations of the Department of Justice (28 C.F.R. parts 35 or 36, as applicable). The provisions of this part shall be interpreted in a manner that will make them consistent with applicable Department of Justice regulations. In any case of apparent inconsistency, the provisions of this part shall prevail.

49 C.F.R. § 37.21(c) (describing the general applicability of the regulations); see also 28 C.F.R. App. A to part 35; 49 C.F.R. App. D to part 37.

We are unconvinced that either the ADA or its implementing regulations require DART to make reasonable modification to its paratransit service to accommodate Jason Melton. We reason as follows. Paratransit services are provided as a complement to fixed route service for qualified individuals. 42 U.S.C. § 12143.

---

[6]The Meltons cite case law in support of this proposition, arguing that Martin v. Metro. Atlanta Rapid Trans. Auth., 255 F.Supp.2d 1362, 1373 (N.D. Ga. 2002), and Burkhart v. Washington Metro. Area Trans. Auth., 112 F.3d 1207, 1210 (D.C. Cir. 1997), hold that regulations in part A do apply to entities regulated under part B. This assertion is misleading because the court in Burkhart, on which Martin relies, explicitly declines to address the contention that part A regulations do not apply to public transportation providers subject to part B because the contention was not properly preserved. Burkhart, 112 F.3d at 1210 n.1.

11

The ADA provides in 42 U.S.C. § 12143 a comprehensive scheme detailing the requirements for compliance with the ADA, including a definition of discrimination to be used in determining compliance of paratransit services with the ADA:

> It shall be considered discrimination for purposes of section 12132 of this title . . . for a public entity which operates a fixed route system . . . to fail to provide with respect to the operations of its fixed route system, in accordance with this section, paratransit and other special transportation services to individuals with disabilities, including individuals who use wheelchairs, that are sufficient to provide to such individuals a level of service (1) which is comparable to the level of designated public transportation services provided to individuals without disabilities using such system . . . .

42 U.S.C. § 12143(a). Accordingly, public entities operating a fixed route system are required to submit a plan annually to the Secretary of Transportation, who reviews the plan to determine whether the plan meets the requirements of 42 U.S.C. § 12143(a). 42 U.S.C. §§ 12143(c)(7) & (d). These requirements include providing a level of service with paratransit service comparable to the services provided to individuals without disabilities using the fixed route system. See 49 C.F.R. § 37.147. Once the plan is approved, the public entity is required to provide paratransit services in accordance with the plan. Providing paratransit services not in accordance with the plan is the prohibited discrimination. 42 U.S.C. § 12143(e)(4).

12

Because paratransit service is meant to act as the disability complement to established fixed route transportation services, this comprehensive regulatory scheme signals that no interim extra-plan modification is statutorily or otherwise required by a public entity when the public entity is properly operating under a FTA-approved plan. The FTA-approved plan is itself the accommodation to the disabled by the public transportation entity. It is the violation of the plan itself that constitutes the prohibited discrimination under title II, not the failure to modify the plan to address particularized complaints. The Meltons do not assert that DART is operating in a manner that is not in accordance with its FTA-approved paratransit plan[7] and, therefore, the ADA does not impose a requirement upon DART to modify its plan to serve Jason Melton's particular demands.

The regulations likewise do not impose a duty on DART to make reasonable modifications of its paratransit service. Although the regulations acknowledge that aspects of the provision of public

_____

[7]The Civil Rights Office of the FTA issued a decision in a factually similar complaint that stated that the discontinuation of alley pick-ups did not make DART's paratransit service deficient. The exact pick-up and drop-off sites are operational issues to be determined by DART. Although this decision has no precedential value for the case before us, it demonstrates one of the avenues open to the Meltons and similarly situated individuals to challenge DART's provision of services. Among other options, dissatisfied individuals may challenge the plan itself as not providing comparable service or challenge service as not in compliance with the plan. In short, our decision in this case does not relegate disabled individuals to voiceless acceptance of subpar transportation merely because the ADA does not require reasonable modification to paratransit services.

13

transportation <u>may</u> be regulated by Department of Justice regulations, <u>see, e.g.</u>, 49 C.F.R. § 37.21(c), the plain language of 28 C.F.R. § 35.102(b) cannot be ignored:

> To the extent that public transportation services, programs, and activities of public entities are covered by subtitle B of title II of the ADA (42 U.S.C. 12141), <u>they are not subject to the requirements of this part</u>.

(Emphasis added). It is undisputed that the operation of DART's paratransit service is covered by 42 U.S.C. §§ 12141, <u>et. seq.</u>, and that the Secretary of Transportation has been directed by statute to issue regulations relating specifically to paratransit transportation. Furthermore, even if the Secretary of Transportation only has the authority to promulgate regulations relating directly to transportation, the reasonable modification requested by the Meltons relates specifically to the operation of DART's service and is, therefore, exempt from the Attorney General's regulations in 28 C.F.R. part 35. To the point, the ADA's implementing regulations impose no requirement on DART to make reasonable modifications to its paratransit service.

C

Finally, we hold that the Rehabilitation Act does not provide an independent basis for requiring DART to make reasonable modification to its paratransit service. Section 504 of the Rehabilitation Act provides

> no otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the

14

> participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . .

29 U.S.C. 794(a).[8] Congress intended to extend the protections of the Rehabilitation Act to cover all programs of state or local governments when it passed the ADA. See Hainze, 207 F.3d at 799. The language of title II generally tracks the language of section 504 of the Rehabilitation Act. The remedies, procedures and rights available under title II are those available under Section 504. 42 U.S.C. § 12133. We decline to find that a right to reasonable modification in paratransit services is created by the Rehabilitation Act when an identical right does not exist under the ADA. We hold that DART is not required by the Rehabilitation Act to make reasonable modification to its paratransit service.

### III

For the aforementioned reasons, we hold that DART is not required by either the ADA or the Rehabilitation Act to make reasonable modification to its paratransit service. The Meltons have failed to establish a prima facie case of discrimination under

---

[8]The prima facie case of discrimination under the Rehabilitation Act is operationally identical to the test under the ADA, requiring a plaintiff to allege: (1) the existence of a program or activity within the state which receives federal financial assistance; (2) the plaintiff is an intended beneficiary of the federal assistance; and (3) the plaintiff is a qualified handicapped person, who solely by the reason of her handicap has been excluded from participation in, been denied benefits from, or otherwise has been subject to discrimination under such program or activity. See Brown v. Sibley, 650 F.2d 760, 769 (5th Cir. 1981).

15

either the ADA or the Rehabilitation Act, and summary judgment was appropriately granted to DART.  The judgment of the district court is therefore

AFFIRMED.

16