DISABLED IN ACTION OF
PENNSYLVANIA, et
al.

v.

NATIONAL PASSENGER RAILROAD
CORPORATION ("Amtrak")

No. Civ.A. 05–326.

United States District Court,
E.D. Pennsylvania.

June 17, 2005.

Stephen F. Gold, Philadelphia, PA, for Plaintiffs.

Diane J. Ruccia, Landman Corsi Ballaine & Ford, Philadelphia, PA, for Defendant.

## MEMORANDUM

BARTLE, District Judge.

Plaintiffs Disabled in Action of Pennsylvania ("DIA"), Liberty Resources, Inc. ("LRI"), and Erik von Schmetterling ("Schmetterling"), challenge the refusal of defendant National Passenger Railroad Corporation ("Amtrak") to provide certain additional seating accommodations on its trains at no extra charge for groups of wheelchair users who wish to travel together.

Plaintiffs seek permanent injunctive relief under: Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.;* § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.;* and assorted regulations. Amtrak has moved for summary judgment on the plaintiffs' claims as well as for summary judgment with respect to its counterclaim for certain expenses it incurred in providing such accommodations in the past.

## I.

Under Rule 56(c) of the Federal Rules of Civil Procedure, we may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 254, 106 S.Ct. 2505. We review all evidence and make all reasonable inferences from the evidence in the light most favorable to the non-movant. *See Wicker v. Consol. Rail Corp.,* 142 F.3d 690, 696 (3d Cir.1998). The non-moving party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

## II.

The following facts are uncontested for purposes of this motion. Plaintiff DIA is a non-profit Pennsylvania corporation that advocates for the civil rights of persons with disabilities. Its members include disabled persons who utilize wheelchairs. Plaintiff LRI is a non-profit, non-membership organization created under federal law. It is an organization that promotes independent living for its "consumers," who are persons with disabilities. The majority of its board of directors and staff consists of disabled individuals. Plaintiff Schmetterling is an individual who must use a motorized wheelchair for ambulation. He is a member of DIA and a former chair of LRI's board of directors.

Defendant Amtrak is a rail carrier with a statutory responsibility to provide intercity rail transportation throughout the United States. 29 U.S.C. § 24101(a). Several times a year over the past ten years, DIA members, LRI staff and consumers, and Schmetterling have used Amtrak's intercity rail service to travel as a group to various cities including Harrisburg and Washington, to advocate issues that relate to individuals with disabilities. On occasion there were more wheelchair users in the group than Amtrak could accommodate on a single train. The plaintiffs desired to travel together on one train because many of the wheelchair users shared personal attendants, and there were not enough attendants to place on

separate trains if the group were to split up. Thus, with advance notice, Amtrak removed seats to accommodate all of the wheelchair passengers on a single train at no additional cost.

On January 5, 2005, DIA apparently telephoned Amtrak to purchase twenty-six tickets for an advocacy trip to Washington, D.C. on February 26, 2005, returning on March 3, 2005. Twelve tickets were for wheelchair users. According to Amtrak, it informed DIA that a $200 per ticket charge would be imposed for the six seats that it needed to remove in order to be able to accommodate all twelve passengers using wheelchairs. After unsuccessful attempts by the plaintiffs to convince Amtrak to waive the charge, the plaintiffs, on January 24, 2005, filed this lawsuit. Because the plaintiffs' advocacy trip was imminent, the court held a telephone conference during which Amtrak agreed to remove the six seats without assessing the seat removal charge. Amtrak, however, reserved the right in this action to seek reimbursement.

### III.

The plaintiffs' entitlement to permanent injunctive relief is first dependent upon whether they can show success on the merits of their ADA and Rehabilitation Act claims. *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir.2001). The court must then consider whether equity warrants such a remedy by considering whether "the moving party will be irreparably injured by the denial of injunctive relief, [whether] the granting of the permanent injunction will result in even greater harm to the defendant; and [whether] the injunction would be in the public interest." *Id.; see also Ciba–Geigy Corp. v. Bolar Pharm. Co., Inc.*, 747 F.2d 844, 850, 853 (3d Cir.1984).

Section 504 of the Rehabilitation Act prohibits disability discrimination by, among other entities, programs and activities receiving federal funding. 29 U.S.C § 794(a). Title II of the ADA "extends section 504's anti-discrimination principles to public entities" generally. 42 U.S.C. § 12132; *Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir.1995). The ADA also commands that its regulations be patterned after those promulgated under § 504. *Helen*, 46 F.3d at 331. The parties have relied upon the language of the ADA and its regulations to support their arguments with respect to both the ADA and the Rehabilitation Act. Our Court of Appeals has held that the substantive standards for determining liability under either statute are the same, *Antol v. Perry*, 82 F.3d 1291, 1299 (3d Cir.1996). Therefore, we may "confine our discussion to the ADA with the understanding that the principles will apply equally to the Rehabilitation Act." *Chisolm v. McManimon*, 275 F.3d 315, 325 n. 9 (3d Cir.2001).

To establish a prima facie case of disability discrimination under these statutes, the plaintiffs must demonstrate that: (1) they are qualified individuals with disabilities within the meaning of the statutes; (2) they are being excluded from participation in, or are being denied the benefits of the services, programs, or activities of a covered entity, or are otherwise being discriminated against by the covered entity; and (3) such exclusion, denial of benefits, or discrimination is by reason of their disability. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir.1999); *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir.2004). It is undisputed that at least some of the plaintiffs are qualified individuals with disabilities. Moreover, Amtrak is defined as a public entity subject to Title II of the ADA, *id.* at § 12131(1)(C), and agrees that it is subject to the Rehabilitation Act. The question before us is whether Amtrak's refusal to

provide additional spaces on a single train, at no extra charge, for the wheelchair users in plaintiffs' group amounts to unlawful discrimination.

Title II of the ADA is divided into two parts. Part A applies to public entities generally. *Id.* at §§ 12131–12132. It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits or the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Department of Justice ("DOJ") has responsibility for issuing regulations implementing Part A. *Id.* at § 12134; *see also* 28 C.F.R. Part 35.

Part B of Title II of the ADA applies only to public entities that provide public transportation, including Amtrak. *Id.* at §§ 12141–12150 and 12161–12165. It details specific actions that are considered discriminatory under § 12132 of Part A and under § 794 of the Rehabilitation Act. Part B states that "[i]t shall be considered discrimination for purposes of section 12132 of this title and section 794 of Title 29 for a person who provides intercity rail transportation to fail" to have the required accommodations listed. *Id.* at § 12162(a)(1) and (a)(3)(A). "Intercity rail transportation" is defined as transportation provided by Amtrak. *Id.* at § 12161(3). It is the Department of Transportation ("DOT"), rather than the DOJ, that issues regulations implementing this section of Part B. *Id.* at § 12164; *see also* 49 C.F.R. Part 37.

Among other things, Part B outlines specific seating accommodations that Amtrak must provide to its passengers who use wheelchairs. *Id.* at § 12162. Amtrak must have:

[o]n each train which includes one or more single-level rail passenger coaches—

(ii) a number of spaces—

(I) to park and secure wheelchairs (to accommodate individuals who wish to remain in their wheelchairs) equal to not less than the total number of single-level rail passenger coaches in such train; and

(II) to fold and store wheelchairs (to accommodate individuals who wish to transfer to coach seats) equal to not less than the total number of single-level rail passenger coaches in such train. . . .

42 U.S.C. § 12162(a)(3)(A)(ii)(I) & (II). Thus, for example, a train that had seven single level rail passenger coaches would need seven spaces to park and secure wheelchairs and seven spaces to "fold and store wheelchairs."

It is undisputed that Amtrak provides and has provided at all relevant times seating accommodations for wheelchair users in compliance with Part B. However, the plaintiffs contend the reasonable modification requirement of the DOJ regulations under Part A of Title II of the ADA obligates Amtrak to provide accommodations above and beyond those required under Part B. *See* 28 C.F.R. § 35.130(b)(7). That DOJ regulation states that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). The plaintiffs want Amtrak to (1) provide more spaces on the trains than required in Part B to park and secure wheelchairs or (2) use aisle chairs [1]

---

**1.** Aisle wheelchairs are smaller in width than normal wheelchairs and are used to transport wheelchair users to regular seats while their wheelchairs are folded and stored.

to assist wheelchair users into regular seats and to provide storage for the unused wheelchairs.

Amtrak argues that it is not subject to the reasonable modification requirement with respect to the wheelchair passenger accommodations at issue. As noted above, this requirement is found within a regulation issued by the DOJ to carry out Part A. 28 C.F.R. § 35.130(b)(7). Part A authorizing the DOJ to issue regulations contains a significant limitation:

> (a) [T]he Attorney General shall promulgate regulations in an accessible format that implement this part. *Such regulations shall not include any matter within the scope of the authority of the Secretary of Transportation under section ... 12164 of this title.*

42 U.S.C. § 12134(a) (emphasis added). Two aspects of intercity rail transportation encompassed by Part B, and for which the DOT is to issue regulations, are (1) the "the number of spaces to park and secure wheelchairs ..." and (2) "the number of spaces to fold and store wheelchairs...." *Id.* at § 12162(a)(3)(A)(ii)(I) and (II).

Section 12134 of Part A continues:

> (c) Regulations under subsection (a) of this section shall include standards applicable to facilities and vehicles covered by this part, *other than facilities, stations, rail passenger cars, and vehicles covered by part B of this subchapter.*[2]

42 U.S.C. § 12134(c) (emphasis added). Amtrak's trains, of course, include "rail passenger cars" covered by Part B. *Id.* at § 12161(4).

Furthermore, the section of the DOJ regulations entitled "Application" states that "[t]o the extent that public transportation services, programs, and activities of public entities are covered by subtitle B of title II of the ADA (42 U.S.C. 12142), *they are not subject to the requirements of this part.*" 28 C.F.R. § 35.102(b) (emphasis added). The number of spaces to park and secure wheelchairs and the number of spaces to park and fold wheelchairs are matters specifically covered by Part B.

Plaintiffs maintain that Amtrak must be subjected to the reasonable modification requirement despite this statutory and regulatory language. Plaintiffs first contend that to limit Amtrak's responsibilities to those outlined in Part B and exempt it from the reasonable modification requirement of Part A would relieve it of any obligation to accommodate wheelchair users in ways unrelated to seating capacity as well as relieve it of any obligation to accommodate persons with hearing and visual disabilities. Plaintiffs' argument is misplaced. Amtrak does not contend that it is wholly exempt from the reasonable modification requirement. It simply asserts that it is exempt from the reasonable modification requirement with respect to matters governed by Part B, including the wheelchair accommodations at issue here. For example, Amtrak concedes that the accommodation of service animals is not encompassed by Part B and that it is therefore subject to the reasonable modification requirement with respect to them.

Plaintiffs next argue that one of their requested accommodations—that Amtrak use aisle chairs to assist wheelchair users into regular seats and provide storage for the wheelchairs—does not fall within the limiting language of Part A and the DOJ regulations and thus is subject to the DOJ's reasonable modification requirement. This is simply not the case. Part B specifically addresses the transfer of individuals from wheelchairs to seats. 42

---

**2.** "Subchapter" II of the ADA and "Title" II of the ADA are used interchangeably through-

out the relevant statutory and regulatory sections.

U.S.C. § 12162(a)(2)(B)(iii) and (a)(3)(A)(ii)(II). While it does not mention how to effectuate the seat transfer, Amtrak must furnish a space for the storage of the wheelchair of each wheelchair user who Amtrak transfers to regular seating. Part B lists the minimum number of spaces required to fold and store wheelchairs. 42 U.S.C. § 12162(a)(3)(A)(ii)(II). Thus, the plaintiffs' request is encompassed by Part B and is within the scope of the authority of the Secretary of Transportation to issue regulations. The reasonable modification requirement simply does not compel Amtrak to provide more storage space for the wheelchairs than required under Part B. *See* 42 U.S.C. § 12134(a) & (c); 28 C.F.R. § 35.102(b).

A reading of Parts A and B of Title II of the ADA, as well as the DOJ regulations implementing Part A and the DOT regulations implementing Part B, leads us to conclude that, with respect to the wheelchair accommodation requests of the plaintiffs at issue here, Amtrak is not mandated to make any modifications above and beyond what is required by Part B. Our analysis is equally applicable to the Rehabilitation Act, *see Antol*, 82 F.3d at 1299; *see also Melton*, 391 F.3d at 676.

■ Plaintiffs also contest any imposition by Amtrak of a $200 per ticket charge for wheelchair accommodations beyond what is required under Part B. Both the DOJ and the DOT regulations contain provisions prohibiting covered entities from imposing "surcharges" or "special charges" upon disabled individuals for certain services. Specifically, the DOJ regulations state: "[a] public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part." 28 C.F.R. § 35.130(f). The DOT regulations have a similar provision: "[a]n entity shall not impose special charges, not authorized by this part, on individuals with disabilities, including individuals who use wheelchairs, for providing services required by this part or otherwise necessary to accommodate them." 49 C.F.R § 37.5(d).

Both regulations simply prohibit Amtrak from imposing special charges or surcharges for services "required" by Title II of the ADA or its regulations. Amtrak does not impose extra fees for the use of the wheelchair accommodations it provides in accordance with Part B. However, Amtrak may assess fees for additional accommodations it makes available that are not compelled by the ADA or its regulations. We have already held that nothing in either Part A or Part B of Title II or its regulations requires Amtrak to provide the accommodations requested by the plaintiffs that exceed the mandate of Part B. As such, the $200 per ticket charge for supplying more than the required number of spaces for wheelchairs on a train is not prohibited.[3]

For these reasons, the plaintiffs cannot establish a prima facie case of disability discrimination under either the ADA or the Rehabilitation Act. They therefore can-

---

3. Plaintiffs also argue that the language in the DOT regulation prohibiting Amtrak from imposing charges for services "required by this part *or otherwise necessary to accommodate*" individuals with disabilities means that Amtrak must provide wheelchair accommodations beyond those required by Part B. 49 C.F.R. § 37.5(d) (emphasis added). We are not persuaded. To read § 37.5(d) as implicitly obligating Amtrak to make modifications pursuant to the DOJ regulations in all situations would ignore the plain language of the limitations within § 12134 of Part A and within the DOJ regulations themselves. *See* 42 U.S.C. § 12134(a) and (c); 28 C.F.R. § 35.102(b); *see also Melton*, 391 F.3d at 675.

not demonstrate success on the merits of their claims and are not entitled to permanent injunctive relief. Summary judgment will therefore be granted in favor of Amtrak.

■ Finally, we turn to Amtrak's counterclaim for unjust enrichment. Amtrak's position is that the plaintiffs were unjustly enriched when they were permitted to travel on February 26, 2005 and March 3, 2005 without paying the $200 per ticket charge for six of the wheelchair passengers.

■ To prevail on its unjust enrichment claim, Amtrak must show: (1) that it conferred benefits on the plaintiffs, (2) that the plaintiffs appreciated the benefits, and (3) that the plaintiffs accepted and retained the benefits under such circumstances that it would be inequitable for plaintiffs to retain the benefits without payment of value. *Schenck v. K.E. David, Ltd.*, 446 Pa.Super. 94, 666 A.2d 327, 328 (1995). At this early stage, the record is undeveloped and the parties are entitled to discovery on this issue. Genuine issues of material fact exist. We will deny Amtrak's motion for summary judgment on its counterclaim.

### *ORDER*

AND NOW, this 17th day of June, 2005, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendant National Railroad Passenger Corporation ("AMTRAK") for summary judgment with respect to plaintiffs' claims is GRANTED;

(2) judgment is entered in favor of defendant National Railroad Passenger Corporation ("AMTRAK") and against plaintiffs Disabled in Action of Pennsylvania, Liberty Resources, Inc., and Erik von Schmetterling, with respect to plaintiffs' claims;

(3) the motion of plaintiffs for permanent injunctive relief is DENIED; and

(4) the motion of defendant National Railroad Passenger Corporation ("AMTRAK") for summary judgment on its counterclaim is DENIED.