915 A.2d 1041

J.D.A., APPELLANT–APPELLANT, v. NEW JERSEY DEPARTMENT
OF CORRECTIONS, RESPONDENT–RESPONDENT, AND COR-
RECTIONAL MEDICAL SERVICES, RESPONDENT.

Argued November 28, 2006—Decided February 27, 2007.

*Roger C. Martindell* and *Bruce I. Afran,* argued the cause for appellant (*Mr. Martindell* and *Mr. Afran,* attorneys; *Mr. Martindell, Mr. Afran* and *J.D.A.,* pro se, on the briefs).

*Lisa A. Puglisi,* Deputy Attorney General, argued the cause for respondent (*Stuart Rabner,* Attorney General of New Jersey, attorney; *Ms. Puglisi* and *Christopher C. Josephson,* Deputy Attorney General, on the letter briefs).

Justice LONG delivered the opinion of the Court.

Although individuals incarcerated as the result of a criminal conviction forfeit many privileges, they are not totally without the protections of the United States Constitution. Indeed, the Eighth Amendment's proscription against cruel and unusual punishment encompasses certain fundamental human rights, including the right of inmates to adequate medical care. *Estelle v. Gamble,* 429 *U.S.* 97, 103, 97 *S.Ct.* 285, 290, 50 *L.Ed.*2d 251, 259 (1976). Essential to the notion of affording adequate medical care is the maintenance of complete and accurate medical records. *Cody v. Hillard,* 599 *F.Supp.* 1025, 1057–58 (D.S.D.1984), *aff'd in part, rev'd in part on other grounds,* 830 *F.*2d 912 (8th Cir.1987); *Burks v. Teasdale,* 492 *F.Supp.* 650, 676 (W.D.Mo.1980). This

appeal concerns one inmate's odyssey to correct an erroneous entry in his medical records.

I.

J.D.A. is presently, and at all relevant times has been, incarcerated at the New Jersey State Prison (NJSP) in Trenton. NJSP is administered by the New Jersey Department of Corrections (DOC) which, in turn, has contracted out the provision of medical services in the prison to a private provider—Correctional Medical Services (CMS). CMS maintains the medical records of inmates in electronic form.

J.D.A. suffers from Hepatitis C. In 2001, he was tested to ascertain his viral load for the purpose of determining treatment. On June 4, 2001, notes in J.D.A.'s electronic medical record indicated that the virus was "not detected." J.D.A. thereafter sought the original lab reports. In January 2003, through the efforts of an attorney, J.D.A. obtained his reports which revealed that the virus "was detected" and that the June 4, 2001, notation to the contrary was incorrect.

On March 23, 2004, J.D.A. submitted a formal written grievance to the Health Services Administrator at NJSP requesting a correction of his medical records, listing five factual errors in his electronic medical summary. Receiving no response, on April 22, 2004, J.D.A. sought relief from the DOC by completing a remedy form which was forwarded by DOC to CMS. Nearly two months later, on June 18, 2004, J.D.A. received a response from CMS Nursing Supervisor Mary Amato dated May 19th stating that "[d]ocumentation entered into a chart is considered a legal document and no one can change that information."

On June 21, 2004, J.D.A. appealed to the Administrator of NJSP, maintaining that Amato's response was "contrary to law." The Administrator denied relief. J.D.A. then appealed to the Appellate Division. In that court, DOC moved to supplement the record with a certification from Dr. Richard Cevasco, its Medical Records Director. In the certification, Cevasco stated that "[t]he

[DOC] has contracted with [CMS] to provide inmates medical care"; that they (DOC and CMS) are "two separate entities"; that "[DOC] staff [does] not have the ability to make changes to medical records of inmates"; and that CMS employees "are the only individuals who have the ability to make changes to an inmate's medical record."

DOC also moved for summary disposition based on Dr. Cevasco's letter, arguing that it is "not a health care provider nor the entity responsible for the maintenance of inmate medical records," and that "any complaint of alleged violations with respect to [J.D.A.'s] medical records" should have been directed to CMS.

J.D.A. filed a cross-motion for summary disposition arguing, among other things, that DOC "has a non-delegable duty to maintain complete and accurate medical records and [has] the final administrative authority to review and resolve inmate complaints."

In response, DOC reiterated that it had no responsibility for J.D.A.'s medical records:

> [DOC] *does not dispute that [J.D.A.] has a statutory and Constitutional right to accurate medical records.* However, [J.D.A.'s] records are the property of [CMS]. As set forth in respondent's brief, the [DOC] does not have the ability to change his records. Therefore, respondent agrees with [J.D.A.'s] contention that this case belongs more appropriately in the Law Division and not the Appellate Division. However, CMS, not the [DOC], is the appropriate defendant in that action. [(emphasis added).]

CMS was provided copies of the cross-motion and did not enter an appearance in the case.

On December 22, 2004, the Appellate Division granted DOC's motions:

> As supplemented, the motion for summary disposition is granted because, according to Dr. Richard Cevasco, Medical Records Director of DOC, only Corrections Medical Service (CMS), a separate entity from the DOC, has the authority to correct medical records of inmates. We, however, order the DOC to submit to CMS, within 10 days of the date of this order, [J.D.A.'s] formal grievance letter of March 22, 2004, which documents purported mistakes in [his] medical records for consideration and determination by CMS.

J.D.A. filed a petition for certification on February 3, 2005. DOC opposed the petition, reaffirming its position that its "denial

of [J.D.A.'s] request to amend his medical records was correct because only [CMS], a separate entity from the [DOC], has the authority to correct medical records of inmates."

On June 13, 2005, we inquired of DOC whether CMS had ever made the corrections to J.D.A.'s medical records. On June 14, 2005, DOC responded with a letter from Carl Ausfahl, Ombudsman for CMS, written on June 5, 2005, agreeing to correct certain errors in J.D.A.'s medical chart and to provide explanations regarding others.

We granted certification, 185 *N.J.* 38, 878 *A.*2d 855 (2005), and allowed supplementation of the record to include J.D.A.'s allegations regarding new violations of his right to accurate records and DOC's responses.

## II.

J.D.A. argues that he has a constitutional right to complete and accurate medical records and to be notified of any life-threatening conditions; that DOC has a non-delegable duty to maintain such records and make such notifications; and that DOC must provide inmates with an effective method for the correction and amendment of medical records.

Despite the serpentine history of this case, during oral argument, DOC finally acknowledged that it, indeed, has a non-delegable duty to assure adequate medical care to inmates. That duty includes notifying them, not only of life-threatening conditions, but also of any serious condition requiring treatment; maintaining and making available to inmates complete and accurate medical records; and providing a procedure by which inaccurate medical records can be corrected.

According to DOC, those duties are now being carried out at its institutions pursuant to its contract with CMS and its current policies and procedures. In particular, DOC represents that every inmate has available complete medical records (not just summaries), kept electronically, including all test results and lab

reports generated within the system; that when an inmate is sent to an outside medical provider, a paper file of those reports, including test and lab results, is also kept and made available to the inmate; and that an inmate may obtain amendment and correction of his medical records by application to the Medical Director. In sum, DOC argues that all constitutional requirements are being satisfied.

■ In a narrow sense, DOC's concessions render the issues presented here moot and obviate the need for us to grapple with J.D.A.'s claims of entitlement under the Federal Constitution. However, in light of the labyrinthine history of this case; DOC's refusal to acknowledge until the eleventh hour its ultimate responsibility for inmate medical care and record keeping; the finger-pointing by DOC and CMS; and the amount of time and effort that was required for J.D.A. to obtain the correction of his records, we are not sanguine over the effectiveness of DOC's present policies and procedures. Certainly, DOC's contract with a private provider is not a sufficient safeguard of the rights of inmates within its jurisdiction given the ability of contracting parties to alter or amend their agreement. That is not to suggest that DOC may not contract out particular duties, but only that the ultimate responsibility for medical care and accurate record keeping is its own.

We therefore order that, in addition to the medical summaries protocol currently in effect under *N.J.A.C.* 10A:22–2.7, DOC must expeditiously enact comprehensive rules and regulations codifying its obligations for medical care and record keeping, and the methods by which they will be satisfied. Those regulations must include DOC's duty to notify inmates of any serious medical condition requiring treatment; to keep complete and accurate medical records (electronic or paper) including all test results and lab reports and to make those complete medical records available to each inmate; and to provide a procedure pursuant to which an

inmate may, within a reasonable time after a request, access medical records and seek correction of them.[1]

The judgment of the Appellate Division is reversed. The case is remanded to the DOC for proceedings consistent with its representations to us and with the principles to which we have adverted.

Chief Justice ZAZZALI and Justices LaVECCHIA, WALLACE, RIVERA–SOTO, and HOENS join in Justice LONG'S opinion. Justice ALBIN did not participate.

*For reversal and remandment*—Chief Justice ZAZZALI and Justices LONG, LaVECCHIA, WALLACE, RIVERA–SOTO and HOENS—6.

Opposed—None.

---

[1] Because the remedies we have provided J.D.A. are at least as broad as any statutory remedies he might have under the Federal Health Insurance Portability and Accountability Act (HIPAA), we decline to address here the disputed question of HIPAA's applicability to DOC.