ALD-261                                          **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2460
_____

JUSTICE RASIDEEN ALLAH,
                                               Appellant,

v.

GEORGE HAYMAN, COMMISSIONER NEW JERSEY
DEPARTMENT OF CORRECTIONS; MICHELE R.
RICCI, ADMINISTRATOR NEW JERSEY STATE
PRISON; JEFFREY BELL, ASSISTANT
ADMINISTRATOR NEW JERSEY STATE PRISON;
JASON PUGH, ADMINISTRATOR CORRECTIONAL
MEDICAL SERVICES NEW JERSEY STATE PRISON;
J. BETHEA, NURSE MEDICAL OMBUDSMAN
CORRECTIONAL MEDICAL SERVICES; AHAB
GABRIEL, PHYSICIAN CORRECTIONAL MEDICAL
SERVICES; DEFILLIPPO, SUPERVISOR OF MENTAL
HEALTH SERVICES FOR NEW JERSEY STATE
PRISON AND OR CORRECTIONAL MEDICAL
SERVICES AND OR UNIVERSITY OF MEDICINE AND
DENTISTRY; STECKEL, HEAD OF SOCIAL SERVICES
NEW JERSEY STATE PRISON; CRYSTAL RAUPP,
SOCIAL WORKER FOR MANAGEMENT CONTROL
UNIT; FARBER, PSYCHOLOGIST CORRECTIONAL
MEDICAL SERVICES AND OR UNIVERSITY OF
MEDICINE AND DENTISTRY; SUE STINGLER,
NURSE; CORRECTIONAL MEDICAL SERVICES
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 08-cv-01177)
District Judge: Anne E. Thompson
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
August 11, 2011

Before:   SCIRICA, HARDIMAN and VANASKIE, Circuit Judges

_____

## OPINION
_____

PER CURIAM

Appellant Justice Rasideen Allah, a New Jersey State prisoner, appeals the District Court's dismissal of his amended complaint. For the reasons that follow, we will dismiss the appeal as lacking an arguable basis in fact or law, 28 U.S.C. § 1915(e)(2)(B)(i).

Allah filed a civil action in the United States District Court for the District of New Jersey against numerous defendants, alleging that his federal and state constitutional and civil rights, and rights under New Jersey's Administrative Code, had been violated. Allah complained generally that Correctional Medical Services ("CMS"), which has since been replaced as the health care provider for New Jersey's state prisons, conducted medical tests in dirty, open areas, and conducted medical interviews in public areas and without regard to patient confidentiality. Allah alleged that *his* rights were specifically violated when the defendants failed to provide him with his medical records, tried to administer a tuberculosis skin test at his cell door, delivered lab test results to him at his cell door and tried to talk to him about them, failed to properly monitor his high blood pressure, and failed to treat his possible chronic kidney disease.

Allah alleged that, between June 30, 2006 and December 30, 2006, he submitted numerous requests to medical personnel for his medical records, which were ignored. On May 22, 2007, Ms. Butler, a medical secretary, visited his cell and gave him a copy of his lab results. She asked if he had any questions for her; Allah refused to discuss his medical issues through his cell door. In late 2007 or early 2008, Dr. Allan Martin

examined him and put him on blood pressure medications. Dr. Martin allegedly told Allah that he had been diagnosed with high blood pressure much earlier, in 2002, and that the physician who diagnosed the condition ordered that it be monitored. That same Dr. Martin, however, ignored lab results that indicated that Allah might be suffering from chronic kidney disease. Allah sought $1 million in compensatory damages, and $10,000,000 in punitive damages.

The CMS defendants moved to dismiss the amended complaint, see Fed. R. Civ. Pro. 12(b)(6). In his opposition to that motion, Allah noted that he had received a letter containing a copy of his medical Chart Summary from a Housing Unit Officer, which had been torn open. Allah contended that providing medical records to him in this manner was an example of how his right to confidentiality had been repeatedly violated.

The District Court granted the CMS defendants' motion to dismiss the amended complaint in part. Dr. Ahab Gabriel was dismissed from the action entirely, and Allah's Eighth, Ninth, and Fourteenth Amendment claims against Jawana Bethea and CMS also were dismissed. In pertinent part, the court determined that Allah had not alleged that Bethea was deliberately indifferent to a serious medical need, that is, his high blood pressure, see Farmer v. Brennan, 511 U.S. 825, 837 (1994). He alleged only that she did not respond adequately to his general request for his medical records. This allegation failed to state a claim under the Eighth Amendment, because the request for the medical records was unrelated to Allah's high blood pressure. In addition, Allah's claim concerning the administration of a TB skin test at the door of his prison cell did not implicate the Eighth Amendment, because conducting such a test did not demonstrate deliberate indifference to a serious medical need, see Estelle v. Gamble, 429 U.S. 97, 104

3

(1976). Last, Allah did not allege any facts to demonstrate a policy on the part of CMS to deny necessary medical care, see Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003) (corporation cannot be held liable for acts of its employees under doctrine of respondeat superior).

The District Court also rejected the plausibility of Allah's privacy claims under the Fourteenth and Ninth Amendments. Noting that prisoners have a right to keep their medical information private, but that the right is "subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security," Doe v. Delie, 257 F.3d 309, 316 (3d Cir. 2001), the court determined that Allah's assertion that he was forced to take a medical test through the food tray slot in his cell door, and that prison medical personnel tried to talk to him about his health through his cell door, did not implicate any constitutional right of privacy. Allah had refused to discuss his medical conditions. Therefore, no confidential medical information was disclosed. Moreover, merely conducting a TB skin test in view of other prisoners does not result in the disclosure of confidential medical information. Last, there were no allegations in the Amended Complaint that CMS ever disclosed any confidential medical information without Allah's consent.

The state Department of Corrections ("DOC") defendants then moved for judgment on the pleadings, see Fed. R. Civ. Pro. 12(c), and the CMS defendants moved to dismiss the claims against them under New Jersey's Constitution, Civil Rights Act, and Administrative Code. The District Court granted both motions. In pertinent part, the court reasoned that New Jersey's civil rights laws generally were co-extensive with 42 U.S.C. § 1983, and thus Allah's state constitutional and civil rights claims, which were

4

based on the same underlying conduct, were subject to dismissal for the same reasons the court dismissed his section 1983 and federal constitutional claims.

The District Court further determined that the CMS defendants had not violated the state administrative code. Section 10A:5-2.23(a), which requires daily visits to inmates in the Management Control Unit, a closed custody unit, during the business week, did not provide a basis for liability because Allah did not allege the necessary facts to support such a claim. Section 10A:5-2.25(a)-(c) requires treatment programs, social workers, psychologists, counseling sessions, and interview rooms for inmates housed in the MCU, but Allah did not allege that he had been denied access to any of these things. Section 10A:4-3.1(a)(1) provides that inmates in the MCU be treated respectfully and fairly by correctional personnel, but there was no factual basis in the amended complaint to support a claim under this provision. Allah's amended complaint showed that the medical defendants responded to his complaints, provided him with medical treatment, and behaved in a professional manner toward him. The District Court dismissed the state DOC defendants for the same reasons the court dismissed the medical defendants, and, in an order entered on June 2, 2011, the District Court dismissed the remaining defendant under Fed. R. Civ. Pro. 4(m).

Allah appeals. We have jurisdiction under 28 U.S.C. § 1291. Our Clerk granted him leave to appeal in forma pauperis and advised him that the appeal was subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B) or summary affirmance under Third Cir. LAR 27.4 and I.O.P. 10.6.

We will dismiss the appeal as frivolous. An appellant may prosecute his appeal without prepayment of the fees, 28 U.S.C. § 1915(a)(1), but the in forma pauperis statute

5

provides that the Court shall dismiss the appeal at any time if the Court determines that it is frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). An appeal is frivolous when it lacks an arguable basis either in law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). "[To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations removed). The complaint must allege facts that, if true, "give rise to an entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007). The standards governing Rule 12(c) motions are the same ones that govern motions to dismiss under Rule 12(b)(6). Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

The District Court properly granted the defendants' motions. To state a claim under the Eighth Amendment, a prisoner must show that the defendants acted with deliberate indifference. Estelle, 429 U.S. at 104-05. To act with deliberate indifference is to recklessly disregard a substantial risk of serious harm. Farmer, 511 U.S. at 836. We have carefully reviewed the briefs Allah filed in the proceedings below, and, of course, his amended complaint. It is plain to us that Allah sought his medical records so that he could independently review them, but mere disagreements over proper medical treatment do not give rise to an Eighth Amendment violation. Spruill, 372 F.3d at 235. Allah alleged that Dr. Martin, although he properly treated Allah's high blood pressure, incorrectly determined that certain lab results, which Allah thought indicated chronic kidney disease, did not require treatment. See Amended Complaint, at ¶ 73 ("Although Dr. Martin advised Plaintiff in December of 2007 that he reviewed his medical chart and

6

saw nothing that would cause alarm, the January 27, 2006 Lab report … would seem to render Dr. Martin's analysis incorrect.").

This and other similar allegations only serve to illustrate that the deliberate indifference standard was not met here. Allah was not exposed to undue suffering or the threat of injury. Spruill, 372 F.3d at 235. He simply takes issue with the amount and kind of medical care he received during the relevant time period. The deliberate indifference standard requires much more. As to the delay in treating his high blood pressure, which we agree was serious, Allah failed to assert that treatment was delayed or denied with a culpable state of mind, see Farmer, 511 U.S. at 837. In addition, we note the rule that allegations of medical malpractice are not sufficient to establish a Constitutional violation, see Spruill, 372 F.3d at 235.

With respect to his privacy claims, no defendant was alleged to have disclosed any of Allah's medical information. Allah himself steadfastly refused to discuss his medical issues where others could listen in. Not surprisingly, given his strong views on the issue of patient confidentiality, he apparently also refused the TB skin test. See Amended Complaint, at ¶ 59-60.[1] Therefore, we need not address whether information concerning

---

[1] Allah asserted:

> 59. On July 14, 2008, Defendant Spingler appeared at Plaintiff's cell door and ordered him to stick his entire arm out the dirty food port slot to submit to TB testing. She was advised by Plaintiff that, conducting medical testing in this manner violated several State and Federal laws. Plaintiff requested to be taken out his cell and brought to the prison's medical department for such testing; or the appropriate area designated by the DOC. Defendant Spingler stated emphatically: stick your arm out the food port or you won't be tested for TB. Plaintiff refused.
> 60. Defendant Spingler instructed Plaintiff to sign a document stating that he was refusing medical care. (Based solely on his refusal to bend over and stick his entire arm out a dirty food slot opening to be injected with a needle for TB testing)[.]

Allah's high blood pressure and his other conditions, is information of the personal kind that a prisoner has an interest in protecting from disclosure, see Doe, 257 F.3d at 317. Similarly, we need not decide whether the mere administration of a TB skin test, where others can look on, implicates a prisoner's right to medical privacy. However, we seriously doubt that merely conducting a TB skin test in view of other prisoners results in a disclosure of confidential medical information sufficient to rise to the level of a constitutional violation.

Last, we agree with the District Court's analysis of the state law issues. Moreover, we note also that J.D.A. v. N.J. Dep't of Corrections, 915 A.2d 1041 (N.J. 2007), which Allah cited in the proceedings below, holds that the DOC "has a non-delegable duty to assure adequate medical care to inmates. That duty includes notifying them, not only of life-threatening conditions, but also of any serious condition requiring treatment; maintaining and making available to inmates complete and accurate medical records; and providing a procedure by which inaccurate medical records can be corrected." Id. at 1043. That duty does not appear to us to have been violated here.

For the foregoing reasons, we will dismiss the appeal as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

---

61. Plaintiff refused to sign such a document. Plaintiff did however, take the refusal document and placed this civil action complaint number on it and a brief note that his rights were being violated, and he was not refusing medical care or treatment.

Amended Complaint, at ¶¶ 59-61.