NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2106-13T2

DIAL, INC., a New Jersey
Nonprofit Corporation,

    Plaintiff-Appellant,

v.

CITY OF PASSAIC and
STATE OF NEW JERSEY,

    Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 14, 2016**
>
> **APPELLATE DIVISION**

Argued November 2, 2015 – Decided January 14, 2016

Before Judges Sabatino, Accurso, and O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2394-12.

Edward A. Kopelson argued the cause for appellant.

Christopher K. Harriott argued the cause for respondent City of Passaic (Florio Kenny Raval, L.L.P., attorneys; Mr. Harriott and Edward J. Florio, of counsel and on the brief).

Christopher A. Edwards, Deputy Attorney General, argued the cause for respondent State of New Jersey (John J. Hoffman, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Valentina M. DiPippo, Deputy Attorney General, on the brief).

Mary A. Ciccone argued the cause for amicus curiae Disability Rights New Jersey (Disability Rights New Jersey, attorneys; Curtis D. Edmonds, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This case brought by a disability rights organization involves the designation of handicapped parking spaces on residential streets. Invoking various federal and state anti-discrimination laws, plaintiff challenges the validity of a portion of a state statute, N.J.S.A. 39:4-197.7. The provision authorizes municipalities to charge a permit fee to disabled persons who request a personally-assigned, exclusive parking space on the street in front of their residences.

On the same legal grounds, plaintiff challenges an ordinance adopted pursuant to N.J.S.A. 39:4-197.7 by the City of Passaic. The ordinance imposes an annual fee of $50 for a disabled person to obtain, upon request, a personally-assigned handicapped parking spot in front of his or her residence. The City has conceded, however, that a separate provision within its ordinance that had imposed a fee for obtaining "generic" (i.e., not personally-assigned) handicapped parking spaces on residential streets was invalid.

Plaintiff contends that fees imposed for personally-assigned parking spaces represent an illegal

A-2106-13T2

surcharge that discriminates against the disabled. Plaintiff argues that such fees wrongfully penalize disabled persons for seeking assured and convenient physical access to their residences from parking spots on public streets. Plaintiff contends that disabled persons cannot be lawfully charged for trying to avoid the risk that a generic handicapped parking space located in front of their dwellings might be taken at times by another disabled user.

The trial court rejected plaintiff's facial challenge to the fees charged pursuant to the statute and the Passaic ordinance for personally-assigned handicapped parking spaces. The court concluded that those fee provisions are not discriminatory and do not conflict with federal or state laws protecting the interests of disabled persons.

For the reasons that follow, we affirm the trial court's sound determination, subject to a few caveats noted at the end of this opinion.

I.

The pertinent background is substantially undisputed. In 1977, the Legislature enacted a statute within Title 39, N.J.S.A. 39:4-197.6 to -197.7, authorizing New Jersey municipalities to adopt ordinances that attempt to address the parking needs of handicapped persons on public streets in front

of their residences.  See L. 1977, c. 309.  As indicated in its legislative history, the statute "permit[s] municipalities, by ordinance, to establish restricted parking zones in residential areas for use by handicapped persons[.]"  Ibid.  The law was passed because "[o]ften, existing parking ordinances present a hardship to persons who are handicapped and cannot find parking near their homes and this [statute] is intended to eliminate that hardship."  Ibid.  Notably, the Legislature specifically identified as a significant feature of the statute its language that enables municipalities to "charge a fee for the issuance of such [handicapped] permits."  Ibid.

The two parts of the statute, sections 197.6 and 197.7, have not been revised or been the subject of any published case law to date.  They read as follows:

> Any municipality may, by ordinance, establish a restricted parking zone in front of a residence occupied by a handicapped person if a windshield placard or wheelchair symbol license plates have been issued for a vehicle owned by the handicapped person, or by another occupant of the residence who is a member of the immediate family of the handicapped person, by the Division of Motor Vehicles pursuant to the provisions of P.L.1949, c.280 ([N.J.S.A.] 39:4-204 et seq.), provided such parking is not otherwise prohibited and the permitting thereof would not interfere with the normal flow of traffic.
>
> [N.J.S.A. 39:4-197.6 (emphasis added).]

The companion provision, <u>N.J.S.A.</u> 39:4-197.7, states that:

> Any municipality enacting an ordinance pursuant to section 1 of this act[1] <u>shall provide for the issuance of permits which identify a specific motor vehicle and the location wherein it is to be parked</u>. Such permits shall only be issued to persons who can prove ownership and operation of the motor vehicle and residency at the location specified thereon. The permit shall be 5 ½ inches by 8 ½ inches in size, shall bear an appropriate certification of authenticity and shall be displayed prominently within the vehicle when it is parked so as to be seen from the middle of the street. Only a motor vehicle for which a valid permit has been issued and which has such permit properly displayed shall be permitted to be parked in the restricted parking zone indicated on such permit. <u>A municipality may, by ordinance, establish a fee for such permits</u>.
>
> [<u>N.J.S.A.</u> 39:4-197.7 (emphasis added).]

The City of Passaic decided to enact an ordinance under the authority conferred by the statute. According to the City's attorney's representation at trial, prior to that ordinance's adoption, Passaic residents who wanted a generic handicapped parking spot on their block could submit an application to the City and pay a fee of $20 in order to "have the spot." There was apparently no process for handicapped residents in the City to obtain a personally-assigned parking space. Nothing in the

---

[1] The statute cross-references <u>N.J.S.A.</u> 39:4-197.6 as being "section 1." <u>N.J.S.A.</u> 39:4-197.7.

record indicates any complaints were filed challenging this earlier policy.

In February 2012[2], the City adopted the ordinance now at issue, Ordinance No. 1889-12, to amend certain portions of its parking code. See Passaic, N.J. Code § 295-7.5(e)-(g). The amendment provided that handicapped residents in the City could request either: (1) "a designated space with a personal restriction that shall be defined by their New Jersey license plate being printed on the signs delineating their space" (a "personalized space"), or (2) "a generic [space] that permits any handicapped driver to park in that space" (a "generic space"). Additionally, the amendment instituted an initial permit fee of $50 for a generic space, with an annual $40 renewal fee, as well as an initial fee of $75 for a personalized space, with an annual $50 renewal fee.

---

[2] In its opinion, the trial court noted that the ordinance in question was amended on November 22, 2011. While the City's code website shows that the overall "Handicapped parking restrictions" portion of the code, Passaic, N.J. Code § 295-7.5, was amended on November 11, 2011, the website reflects that the particular subsections at issue here, Passaic, N.J. Code §§ 295-7.5 (e) and (f), were amended slightly later, on February 21, 2012. See, Passaic, N.J. Code § 295-7.5, http://ecode360.com/15653334. Accordingly, we use the February 21, 2012 adoption date, although the actual date is not critical to our legal analysis of the substantive issues.

Overnight, on-street residential parking is widely allowed within the City, except for certain specified areas. According to its responses to requests for admissions in this litigation, the City allows by ordinance "overnight on-street parking of automobiles on all streets other than those blocks or portions of blocks identified in [Passaic, N.J. Code] § 295-20."[3] The City has further acknowledged that "all of the handicap parking spaces created in accordance with [Passaic, N.J. Code] § 295-7.5[4] are located on blocks that also permit overnight parking by persons who do not have a handicap space."

A.

Plaintiff, DIAL, Inc., an advocacy group for the disabled, is a non-profit organization established pursuant to 29 U.S.C.A. § 796f-4, providing independent living services and advocacy of disability rights. According to plaintiff, its members and "service consumers" are persons with disabilities who reside in Passaic and Essex counties. The City, which is within Passaic County, is thus located within plaintiff's geographic area of concern.

---

[3] This cross-referenced provision contains a list of areas within the City where overnight parking is not allowed.

[4] This is the overall provision that details all of the code's handicapped parking restrictions, the majority of which are not contested in this litigation.

Plaintiff became involved in this matter after several persons with disabilities learned of the City's intention to charge fees for "home-based handicap parking spaces[.]" Plaintiff's executive director sent a letter to Passaic's mayor in March 2012 complaining about the new policy. The letter asserted that the portion of the ordinance charging fees for either a generic or personalized type of handicapped space violated the Americans with Disabilities Act (the "ADA"), 42 U.S.C.A. §§ 12101-12213, and other federal anti-discrimination laws and regulations.

In responding through its counsel to plaintiff's letter, the City asserted that it was expressly permitted to adopt the ordinance, including its fee provisions, under N.J.S.A. 39:4-197.6 and -197.7. The City disputed that the ordinance violated the ADA or any other law.

After his client received the City's negative response, plaintiff's attorney wrote a letter to the New Jersey Attorney General, asking him to "invalidate" N.J.S.A. 39:4-197.7.[5] The

---

[5] We assume that plaintiff's counsel may have been contemplating that the Attorney General issue an opinion letter declaring the fee provision within the statute in violation of federal law, or announce that the Attorney General would not support the enforcement of the statutory provision when implemented by a municipality. Although not mentioned in counsel's letter, it is also conceivable that the issue could have been addressed in some manner by the New Jersey Division on Civil Rights, which is

(continued)

letter expressed specific concern about Passaic's recent adoption of an ordinance under the statute imposing handicapped parking permit fees. Counsel asserted that "[t]he cost of access to a municipal program or service of street parking cannot be charged solely to those persons protected by disability discrimination laws." Counsel further asserted that the permit fees authorized by N.J.S.A. 39:4-197.7 are prohibited under and therefore preempted by federal law. The Attorney General apparently did not act upon or respond to plaintiff's demand.

Plaintiff consequently filed a complaint in lieu of prerogative writs in the Law Division, naming the State of New Jersey and the City as defendants. Plaintiff sought a declaratory judgment stating that the fee provisions within N.J.S.A. 39:4-197.7 and Passaic's parking ordinance are preempted and invalidated by federal law, including the ADA, the Rehabilitation Act (the "RA"), 29 U.S.C.A. §§ 701-796, and the Fair Housing Amendments Act (the "FHAA"), 42 U.S.C.A. §§ 3601-3631; the New Jersey Law Against Discrimination (the "NJLAD"), N.J.S.A. 10:5-1 to -49, and the NJLAD's associated regulation,

---

(continued)
under the general oversight of the Attorney General as part of the Department of Law and Public Safety. See N.J.S.A. 10:5-6 to -8.

N.J.A.C. 13:13-4.6; and the respective equal protection clauses of the United States and New Jersey Constitutions.

The City initially denied that any aspects of its ordinance violated anti-discrimination laws. However, at oral argument in the trial court, the City ultimately conceded that the permit fees it was charging under the ordinance for generic handicapped parking spaces was improper. The City continued to stand by its position that the permit fees it was charging for personalized spaces were, by contrast, valid and non-discriminatory. The State, meanwhile, maintained the validity of N.J.S.A. 39:4-197.7, authorizing permits for personalized spaces.

Among other things, defendants argued that the City's fee for personalized handicapped spaces on residential streets is permissible to defray some of the costs of such a program, because it is a "non-essential benefit" that is not mandated as a disability accommodation under the anti-discrimination laws. Defendants also raised a variety of procedural objections to the lawsuit, including plaintiff's alleged lack of standing, the untimeliness of the complaint under Rule 4:69-6, and improper jurisdiction.

After considering oral argument on the trial date and the parties' written submissions, Judge Garry S. Rothstadt issued a final judgment on December 11, 2013. Consistent with the City's

concession, the court invalidated the portion of the ordinance "to the extent that it requires the payment of fees for unrestricted, on-street handicap parking spaces." The court rejected plaintiff's claims under the balance of the complaint, including its challenge to the City's fees for personalized spaces and to the fee authorization in the related enabling statute, N.J.S.A. 39:4-197.7.

In his accompanying written opinion, Judge Rothstadt declined to dismiss the complaint based on any of the procedural grounds argued by defendants. As to the merits, the judge found no conflict between the fees for personalized spaces, as authorized by N.J.S.A. 39:4-197.7 and the City's ordinance, and any federal or state anti-discrimination laws.[6] In particular, the judge found that no federal statutes or regulations concerning reasonable accommodations for disabled persons "specifically require personalized on-street parking, . . . restricted to the handicapped resident's vehicle." Because the disability laws do not mandate such a benefit, the judge reasoned that the permit fees imposed pursuant to the Title 39 statute and the City's ordinance are not discriminatory and hence are valid.

---

[6] The judge implicitly rejected plaintiff's constitutional claims asserting a denial of equal protection. Plaintiff does not repeat those claims on appeal.

Plaintiff now appeals. It is joined by another advocacy group, amicus curiae Disability Rights New Jersey, in arguing that the trial court erred in upholding the challenged fee provisions for personalized handicapped parking spaces.

Plaintiff maintains that the fees are a discriminatory surcharge that singles out disabled persons who want to have a reliable means of access to parking on the public streets in front of their residences. Plaintiff concedes that municipalities could lawfully charge for such personalized spaces so long as such charges are imposed on all residents requesting such a benefit and are not just targeted to disabled residents. Plaintiff also concedes that not every city or neighborhood must offer personalized parking spots on public streets, but that any governmental program to provide such spaces cannot impose a permit fee solely on the disabled.

By way of remedy, plaintiff asks the court to declare the fee provisions within the statute and the City's ordinance invalid. Plaintiff also seeks to require the City to make refunds of the illegally-collected fees.

A-2106-13T2

II.

A.

Plaintiff bears a substantial burden in proving that the fee provisions within N.J.S.A. 39:4-197.7 and the City's ordinance are invalid. A statute enacted by the Legislature bears a presumption of validity. Roman Check Cashing v. N.J. Dep't of Banking & Ins., 169 N.J. 105, 110 (2001). So does a municipal ordinance duly adopted pursuant to authority delegated by statute. N.J. Shore Builders Ass'n v. Twp. of Jackson, 199 N.J. 38, 55 (2009). "The presumption is not an irrebutable one, but it places a heavy burden on the party seeking to overturn the ordinance." Ibid. (quoting Hutton Park Gardens v. Town Council of W. Orange, 68 N.J. 543, 564 (1975)). In fact, "support for the legislative judgment will be presumed and, absent a sufficient showing to the contrary, it will be assumed that the statute rested 'upon some rational basis within the knowledge and experience of the Legislature.'" Ibid. (quoting Burton v. Sills, 53 N.J. 86, 95 (1968)).

To the extent that plaintiff argues that the statute and ordinance are preempted, plaintiff must show that they are either expressly or impliedly negated by federal law. Giordano v. Giordano, 389 N.J. Super. 391, 395 (App. Div. 2007) (citing Jones v. Rath Parking Co., 430 U.S. 519, 525, 97 S. Ct. 1305,

1309, 51 <u>L. Ed.</u> 2d 604, 613 (1973)).  "Express preemption is 'determined from an examination of the explicit language used by Congress.'"  <u>Ibid.</u>  (citing <u>Gonzalez v. Ideal Tile Importing Co.</u>, 189 <u>N.J.</u> 415, 419 (2005)).  Implied preemption is based on either (1) "field preemption," which exists "where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," or (2) "conflict preemption," which pertains "where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  <u>Ibid.</u>  (citing <u>Gade v. Nat'l Solid Wastes Mgmt. Ass'n</u>, 505 <u>U.S.</u> 88, 98, 112 <u>S. Ct.</u> 2374, 2383, 120 <u>L. Ed.</u> 2d 73, 84 (1992)).

Insofar that plaintiff contends that the fee authorization in <u>N.J.S.A.</u> 39:4-197.7 is nullified by a separate New Jersey statute, the NJLAD, the court must endeavor to harmonize those enactments before declaring one or the other unenforceable.  <u>See</u> <u>N.E.R.I. Corp. v. N.J. Highway Auth.</u>, 147 <u>N.J.</u> 223, 248-49 (1996) (holding that a "fundamental tenet" of statutory interpretation is that all efforts should be made to harmonize laws discussing the same subject matter and that statutes should be read <u>in pari materia</u>); <u>Timber Glen Phase III, LLC v. Twp. of</u>

Hamilton, 441 N.J. Super. 514, 522 (App. Div. 2015) (holding that two seemingly conflicting statutory provisions should be read in pari materia).

The trial court concluded that, except for the concededly invalid fee the City had been charging for generic handicapped parking spaces, plaintiff failed to meet its burden to demonstrate the invalidity of the statute and ordinance as to the fees charged for personalized spaces. We review that legal determination de novo. State v. Brown, 216 N.J. 508, 545 (2014); Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

### B.

We begin our substantive analysis with a brief overview of the applicable federal laws protecting the interests of handicapped persons. "The ADA and the [RA] . . . prohibit all discrimination based on disability by public entities."[7] Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown Planning Bd., 294 F.3d 35, 45 (2d Cir.), cert. denied, 537 U.S. 813, 123 S. Ct. 74, 154 L. Ed. 2d 16 (2002). In addition, the RA proscribes disability discrimination by recipients of federal funding. See 29 U.S.C.A. § 794. In like manner, the FHAA makes

---

[7] Plaintiff argues this claim under the ADA and the RA interchangeably.

it unlawful to discriminate against disabled persons, including "a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]"  42 U.S.C.A. § 3604(f)(3)(B).

"The remedies, procedures, and rights" available under the RA are likewise available under the ADA.  42 U.S.C.A. § 12133. Accordingly, "[t]he ADA and the [RA] generally are interpreted in pari materia."  Frame v. City of Arlington, 657 F.3d 215, 223 (5th Cir. 2011), cert. denied, ___ U.S. ___, 132 S. Ct. 1561, 182 L. Ed. 2d 168 (2012).  "Congress enacted the ADA to eliminate discrimination against handicapped individuals by extending the non-discrimination principles required at institutions receiving federal funds by the [RA] . . . to a much wider array of institutions and businesses, including services provided by states and municipalities."  Easley ex rel. Easley v. Snider, 36 F.3d 297, 300-01 (3d Cir. 1994) (emphasis added).

Likewise, the FHAA standard for "reasonable accommodation" is virtually identical to that within the RA.  Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 334 (2d Cir. 1995); City of Edmonds v. Wash. State Bldg. Code Council, 18 F.3d 802, 806 (9th Cir. 1994) (noting that the concept of "[r]easonable accommodation [under the FHAA] is borrowed from case law interpreting the

[RA]."), aff'd sub nom., City of Edmonds v. Oxford House, 514 U.S. 725, 115 S. Ct. 1776, 131 L. Ed. 2d 801 (1995).

Plaintiff and the amicus contend that the permit fee charged by the City to disabled persons who want personalized handicapped spaces in front of their residences is a "surcharge" prohibited by the ADA and other federal law. They emphasize that the ADA has been construed to signify that "surcharges against disabled people constitute facial discrimination[.]" Dare v. California, 191 F.3d 1167, 1171 (9th Cir. 1999), cert. denied, 531 U.S. 1190, 121 S. Ct. 1187, 149 L. Ed. 2d 103 (2001); see also Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 545 (W.D. Pa. 2013). The ADA's associated regulations specifically prohibit public entities from placing

> a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as provisions of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act.

> [28 C.F.R. § 35.130(f)(emphasis added).]

In order to evaluate whether a fee charged by a public entity constitutes such an improper surcharge under the ADA, courts perform "a two-part inquiry." Dare, supra, 191 F.3d at 1171. First, "as a threshold matter, [courts] consider whether the measure for which [a public entity] levies [a] fee is

'<u>required to provide</u> that individual or group nondiscriminatory treatment' as mandated by the ADA." <u>Ibid.</u> (emphasis added) (quoting 28 <u>C.F.R.</u> § 35.130(f)). If a public entity "charges for a measure <u>not required</u> under the ADA, the inquiry ends[,]" as 28 <u>C.F.R.</u> § 35.130(f) "only forbids surcharges for 'required' measures." <u>Ibid.</u> (emphasis added).

Second, courts in these contexts "evaluate whether the fee for the measure is a surcharge; in other words, [courts] consider whether [the fee] constitutes <u>a charge that nondisabled people would not incur</u>." <u>Ibid.</u> (emphasis added). "If nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a 'required' measure." <u>Ibid.</u> Consequently, "for example, a state can charge a fee for disabled license plates so long as it charges the same fee for nondisabled license plates." <u>Ibid.</u>

As the amicus brief on appeal correctly points out, "it is clear from the [City's] ordinance that the [fee for personalized parking spaces] would only be imposed on individuals with disabilities and [their] family members," given the fact that they are the only individuals allowed to apply for such spaces.[8]

---

[8] <u>See</u> <u>Passaic, N.J. Code</u> § 295-7.5(a) (noting that "[a]ny resident of the City of Passaic possessing a valid New Jersey driver's license who has qualified for a handicapped parking permit from the State of New Jersey may apply to the City of
(continued)

This satisfies the second prong of the <u>Dare</u> test for a prohibited surcharge. Thus, only the first prong of the test is at issue.

The trial court found that nothing in the ADA or other federal laws require the issuance of personalized spaces to disabled persons on public streets in front of their residences. We agree with that observation.

To be sure, under the ADA, special parking arrangements such as generic handicapped parking spaces are sometimes considered "required" for purposes of the first prong of the surcharge analysis. <u>Dare</u>, <u>supra</u>, 191 <u>F.</u>3d at 1172. Likewise, portable handicapped parking placards are at times considered to be required as well. <u>Ibid.</u>

For example, the Ninth Circuit Court of Appeals ruled in <u>Dare</u> that the ADA was violated when California charged residents a $6 fee for portable handicapped placards. <u>Ibid.</u> The court found that the placards were required because: (1) the ADA "requires . . . handicapped parking spaces[,]" as they "allow

_____

(continued)
Passaic for a handicapped parking space located near their residence") (emphasis added); <u>Passaic, N.J. Code</u> § 295-7.5(b) (noting that "[c]onsideration will be given to nondriving applicants for restricted curbside spaces providing that it is shown that there is a hardship in dropping off the handicapped applicant at their residence and subsequently parking the vehicle at another location" and "[t]he nondisabled driver . . . reside[s] in the same household as the disabled person").

disabled people equal access to public buildings in which [the state] provides services, programs, and activities"; and (2) the state "police[d] handicapped parking spaces, [thus] disabled people need[ed] placards or license plates to use them." Ibid.

The Ninth Circuit reasoned in Dare that California's "provision of license plates alone would not be sufficient to give [disabled] individuals nondiscriminatory access to public places." Id. at 1173. That is so because "many disabled people may not own cars or have someone who drives them[,]" and "even those who do [drive] may sometimes have to use other vehicles as passengers or as drivers[,]" and "[t]hey may rent cars or wish to drive with another person." Ibid. Hence, "requir[ing] disabled people to use only a designated car for which they have a license plate restricts them far more in accessing public places than people who lack their disabilities." Ibid.

Other courts likewise have found similar fees charged for handicapped parking placards violate the ADA. See, e.g., Klinger v. Dir., Dep't of Revenue, Mo., 433 F.3d 1078, 1081 (8th Cir. 2006) (holding that placards were required by the ADA and thus could not be a valid basis for imposing surcharges because the State of Missouri had "elected to use parking placards to ensure that disabled people have access to government programs"); Duprey v. Conn. Dep't of Motor Vehicles, 28 F. Supp.

A-2106-13T2

2d 702, 705, 708 (D. Conn. 1998) (holding that placards were required under the ADA because they acted as "a condition to gaining access to designated parking spaces which are required . . . under the ADA"); Thrope v. Ohio, 19 F. Supp. 2d 816, 825 (S.D. Ohio 1998) (holding that the placards were required under the ADA because: (1) disabled residents who did not own cars could not obtain the no-cost license plate option and (2) the license plates did "not provide the same freedom of mobility provided by a placard and required by the ADA").

Conversely, courts applying the Dare test for improper surcharges have ruled that other kinds of accommodations for disabled people are not required under the ADA. See, e.g., Meagley v. City of Little Rock, 639 F.3d 384, 390-91 (8th Cir. 2011); Disabled in Action of Pa. v. Nat'l Passenger R.R. Corp., 418 F. Supp. 2d 652, 658 (E.D. Pa. 2005). For example, in Meagley, the Eighth Circuit held that a public zoo was not required to provide motor scooters to disabled people because it found that "the zoo's scooter rental program went 'above and beyond' its general obligation under the ADA to make its services, programs, and activities accessible to disabled patrons[,]" so charging a rental fee for such scooters did not constitute an unlawful surcharge. Meagley, supra, 639 F.3d at 390. The Court of Appeals found that "the zoo's scooter rental

service . . . was merely a convenience for all zoo visitors" and "[m]oreover, disabled patrons were permitted to bring their own scooters or other mobility devices to the zoo to use without charge." Id. at 390-91.

Likewise, a federal district court in Pennsylvania found no illegal surcharge was being imposed where Amtrak charged wheelchair-bound customers a $200 per-ticket fee when their travel required extra space for their wheelchairs beyond what was expressly required[9] by the ADA. Disabled in Action of Pa., supra, 418 F. Supp. 2d at 658. The court found that because the ADA did not require this accommodation, charging a fee for it did not amount to an unlawful surcharge. Ibid.

### C.

Plaintiff and the amicus cite to no authority that specifically "requires" governmental agencies to provide disabled persons with personalized spaces in front of their residences as a form of reasonable accommodation. In fact, as defendants note, the Public Access Section of the United States Department of Justice (the "DOJ") issued an opinion letter on

---

[9] Part B of Title II of the ADA required the train to have a number of spaces to secure wheelchairs "equal to not less than the total number of single-level rail passenger coaches" on the train. 42 U.S.C.A. § 12162(a)(3)(A)(ii)(I)-(II). The plaintiffs demanded twelve such wheelchair spaces, but the ADA formula only required the train to have six. Disabled in Action of Pa., supra, 418 F. Supp. 2d at 655-56.

November 3, 1992 concluding that a city's practice of charging fees for reserved parking spaces for handicapped persons that are not "generally available to the public" is not discriminatory or in violation of federal law. The DOJ opinion letter evaluated a city's adoption of an ordinance "allowing certain individuals, including persons with disabilities, to purchase curbside parking rights on a monthly basis" for a fee of $25.

The DOJ reasoned that the ordinance at issue was not invalid under federal anti-discrimination laws because: (1) the service was not generally available to the public (as the city only allowed curbside parking up to two hours a day without penalty and this ordinance allowed individuals to acquire access for up to eight hours a day); and (2) the fee was not discriminatory (as the fee was less than the cost "a non[]disabled person would ordinarily have to pay for monthly parking in the downtown area"). The DOJ letter did note that, by contrast, "[u]nder certain circumstances, a city's parking policy might be discriminatory." By way of a counter-example, the letter noted that an illegal surcharge might exist where, hypothetically, a "monthly parking fee in the city's parking garages [was] higher for persons with disabilities than for

A-2106-13T2

persons without disabilities or if these garages did not provide adequate parking spaces for persons with disabilities[.]"

Although the DOJ's opinion letter is not totally dispositive of the federal law issues posed here, we accord it considerable weight. The letter was issued pursuant to the DOJ's authority to furnish technical assistance to individuals and entities concerning their obligations under the ADA. See 42 U.S.C.A. § 12206. To the extent the letter interprets DOJ regulations, such as those administered under the ADA, it is "entitled to substantial deference." Rodriquez v. Barrita, Inc., 10 F. Supp. 3d 1062, 1081 n.15 (N.D. Cal. 2014) (citing Miller v. Cal. Speedway Corp., 536 F.3d 1020, 1028 (9th Cir. 2008), cert. denied, 555 U.S. 1208, 129 S. Ct. 1349, 173 L. Ed. 2d 648 (2009)).

Applying similar reasoning here, the fee charged under the City's ordinance for personalized handicapped spaces does not constitute an unlawful surcharge under the ADA or any related federal provisions. Such personalized parking spaces have not been declared to be a "required" measure under federal law. As the City correctly notes in its brief, "[n]either the ADA itself nor any of its regulations or technical materials contain any [explicit] requirements for the provision of [personalized] on-street parking by a municipality." None of the cases cited in

plaintiff's brief or that of the amicus have imposed such a requirement on states or municipalities.

A requirement for free personalized spaces in front of a disabled person's residence, if it existed at all, would impose a much greater burden on the government than already-existing parking-related requirements. For example, as was previously discussed, it is generally accepted that removable handicapped parking placards are required under the ADA, even when public entities also provide handicapped license plates to disabled motorists at no charge. This is because such placards provide more flexibility to handicapped citizens who might not own a car, receive rides from someone else, and so on.

Requiring public entities to go further and provide handicapped individuals with personalized parking spaces on their residential streets is markedly different from merely requiring the provision of cost-free, portable parking placards. Unlike portable placards, such personalized spaces do not function as a prerequisite for participation in federally-mandated access programs, such as ADA requirements for a specified number or percentage of handicap-accessible parking spaces at various public and private institutions.

Plaintiff and the amicus have not demonstrated on the present record that generic handicapped parking spaces, which

the City now provides free of charge and upon request, are insufficient under federal law to meet the needs of handicapped residents on their streets. The challengers have not supplied any factual evidence that generic spaces have been insufficient to accommodate handicapped Passaic residents. This is not a situation comparable to <u>Fortyune v. City of Lomita</u>, 823 <u>F. Supp.</u> 2d 1036 (C.D. Cal. 2011) <u>aff'd</u>, 766 <u>F.</u>3d 1098 (9th Cir. 2014), <u>cert. denied</u>, ___ <u>U.S.</u> ___, 135 <u>S. Ct.</u> 2888, 192 <u>L. Ed.</u> 2d 294 (2015), in which a plaintiff's ADA claims against a defendant city survived a motion to dismiss where the city had apparently failed to provide any generic handicap-accessible public parking in its on-street diagonal stalls.

Plaintiff assumes that the City's generic spaces are inadequate by implication because the City has elected to adopt an ordinance that allows disabled residents who live on qualifying streets to obtain personalized spaces for an annual fee. Yet the City's voluntary decision to offer such an optional benefit is not the equivalent of an admission or concession that the benefit is required as a reasonable accommodation under federal law.[10] Nor does the Legislature's

---

[10] <u>See, e.g.</u>, <u>Corder v. Lucent Techs.</u>, 162 <u>F.</u>3d 924, 928 (7th Cir. 1998) (finding that an employer who "went the extra mile" in providing accommodations that exceeded ADA requirements was not liable for denying the plaintiff her preferred alternative
(continued)

passage of <u>N.J.S.A.</u> 39:4-197.7 in 1977 authorizing New Jersey towns and cities to offer such personalized spaces represent an admission by the State that this exclusive benefit is required under the anti-discrimination laws.

In sum, in making the personalized-space option available, the City is going "'above and beyond' its general obligation under the ADA[,]" and thus the fee charged for personalized spaces does not constitute an unlawful surcharge. <u>Meagley</u>, <u>supra</u>, 639 <u>F.</u>3d at 390. The circumstances are akin to the situation deemed non-discriminatory in the DOJ's opinion letter, as the City is offering disabled residents who want personalized parking spaces in front of their residences a service that is not generally available to the public. Only handicapped individuals or family members in their households are eligible to apply for the service. No equivalent program allows

_____

(continued)
accommodations); <u>Vande Zande v. Wisconsin Dep't of Admin.</u>, 44 <u>F.</u>3d 538, 545 (7th Cir. 1995) ("[I]f the employer . . . bends over backwards to accommodate a disabled worker [by] go[ing] further than the law requires . . . , it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation."); <u>Brookins v. Indianapolis Power & Light Co.</u>, 90 <u>F. Supp.</u> 2d 993, 1007 (S.D. Ind. 2000) (declining to obligate an employer who provides accommodations "above and beyond" those necessary under the ADA to continue those services indefinitely, noting that it would "effectively punish[]" the employer for exceeding the ADA's "reasonable accommodation" requirements).

non-handicapped individuals to obtain personalized spaces in front of their own houses. Hence, charging a fee for this optional benefit does not run afoul of the ADA or federal law.

D.

We reach the same conclusion under the NJLAD and the associated New Jersey regulations, including N.J.A.C. 13:13-4.6 (providing that it is unlawful under the NJLAD for a place of accommodation "to impose a surcharge on a particular person with a disability . . . to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that may be required by law") (emphasis added).

No New Jersey statute or regulation requires municipalities to furnish personalized spaces to disabled persons in front of their residences. Although we agree that the City and the State are subject to the NJLAD's anti-discrimination laws covering "public accommodations," N.J.S.A. 10:5-12(f)(1), the NJLAD has not been construed to require such an exclusive parking benefit on public streets for disabled residents. N.J.A.C. 13:13-4.6 is not triggered because the personalized spaces are not "required by law."

In adjudicating disability discrimination claims under the NJLAD, our courts have regularly looked to cognate principles under the ADA and related federal law for guidance. See, e.g., Lasky v. Moorestown Twp., 425 N.J. Super. 530, 538 (App. Div.), certif. denied, 212 N.J. 198 (2012). As we have already shown, those cognate federal provisions do not mandate such an accommodation.

Moreover, plaintiff and the amicus have provided no persuasive justification for construing the statutory authority for fee-based personalized parking spaces in N.J.S.A. 39:4-197.7 in a manner that conflicts with the NJLAD. Instead, we construe the two statutes in pari materia, and discern no true conflict between them.[11]

E.

That all said, we do not ignore or minimize the legitimate concerns that disabled residents have in assuring that they will have a parking space conveniently available in front of their residences when they need it. As the Legislature recognized in

---

[11] Although we are not bound by his position, we note that the Attorney General, who is the legal adviser to most state agencies and whose Division on Civil Rights enforces the NJLAD, maintains that the permit fee provision in the Title 39 statute and the City's ordinance do not discriminate against disabled persons in violation of the NJLAD or its regulations. See Quarto v. Adams, 395 N.J. Super. 502, 513 (App. Div. 2007) (acknowledging the non-binding degree of deference accorded to the Attorney General's interpretation of New Jersey laws).

adopting N.J.S.A. 39:4-197.6 and -197.7, the limited availability of parking on some public streets can pose a hardship to persons who are handicapped and who cannot at times find parking near their homes. We are also mindful that the vehicles of visitors or other persons with valid handicapped placards sometimes will occupy the generic parking spaces located in front of another disabled person's home. But the lack of a guaranteed parking space on one's street is also unfortunately a fact of life for residents who are not disabled. Indeed, some people who might not qualify for a handicapped parking permit (such as pregnant women, the elderly, or persons with a badly sprained ankle) can have considerable physical difficulty in getting from a distant street parking space to and from their front doors.

Here, the City has made an earnest effort to address this problem for its disabled residents by issuing personalized spots to them, upon request, for a reasonable annual fee. The law, at least as it presently stands, does not require that such spaces be provided as of right and at public expense. Of course, nothing in this opinion prevents the Legislature or a municipality's governing body from enacting provisions that would require permits for such personalized spaces to be provided free of charge.

For these many reasons, we affirm the trial court's rejection of plaintiff's facial challenge to the statute and to the City's ordinance. In doing so, we mention two important caveats. First, we do not foreclose a future "as-applied" challenge based on competent evidence demonstrating that a municipality's provision of free generic handicapped parking spaces does not, in actual practice, reasonably accommodate the parking access needs of its disabled residents. Second, we do not foreclose a future challenge to a permit fee imposed for a personalized handicapped parking space that, unlike the modest $50 annual fee charged here by Passaic, is manifestly exorbitant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION