**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0528-15T3

SQUIRETOWN PROPERTIES, LLC,

    Plaintiff-Respondent,

v.

TOWNSHIP OF LIVINGSTON and
LIVINGSTSON TOWNSHIP COUNCIL,

    Defendants-Appellants.

_____

> Argued April 26, 2017 — Decided June 16, 2017
>
> Before Judges Alvarez, Accurso and Manahan.
>
> On appeal from Superior Court of New Jersey,
> Law Division, Essex County, Docket Nos. L-
> 9785-07 and L-326-15.
>
> Gary T. Hall argued the cause for appellants
> (McCarter & English, LLP, attorneys; Mr.
> Hall, of counsel and on the brief).
>
> Craig M. Gianetti argued the cause for
> respondent (Day Pitney, LLP, attorneys; Mr.
> Gianetti, of counsel and on the brief; Sarah
> Sakson Langstedt, on the brief).

PER CURIAM

    Defendants Township of Livingston and Livingston Township

Council appeal from an order in aid of litigant's rights in

favor of plaintiff Squiretown Properties, LLC, declaring Livingston Ordinances 18-2014 and 19-2014 "invalid as applied to [Squiretown's] project, which is the subject of a builder's remedy award . . . for being an unnecessary cost-generative feature." Because the trial court failed to accord the ordinances the presumption of validity to which they are entitled and made factual findings on the basis of conflicting certifications, we vacate the order and remand for discovery and an evidentiary hearing.

We summarize only so much of the long procedural history of this matter as necessary to provide context for our decision. In 2010, following a finding the Township was not in compliance with its Third Round Mount Laurel[1] obligations, the court awarded plaintiff a builder's remedy directing the re-zoning of its property to permit the construction of an inclusionary residential development consisting of 220 apartments with a twenty percent set-aside for low and moderate income households, forty-four units. See Joseph Kushner Hebrew Acad., Inc., v. Twp. of Livingston, No. A-5797-10 (App. Div. Aug. 30, 2013) (affirming the trial court's order).

---

[1] S. Burlington Cnty. N.A.A.C.P. v. Twp. of Mt. Laurel, 92 N.J. 158, 201 (1983) (Mount Laurel II).

In 2011, Squiretown sought scarce resource restraints, leading eventually to a memorandum of understanding, executed in January 2014 and approved by the court, providing that the Township would undertake steps to increase its water capacity and commission a study of its sewer system. The MOU noted a proposed agreement between the New Jersey Department of Environmental Protection and the Township to address Livingston's water capacity deficit, which would permit the DEP to process water supply connections for Squiretown's project. The MOU noted Livingston's agreement with the DEP required the Township to upgrade certain wells and complete others, requiring capital expenditures, and permitted the DEP to require Livingston to purchase additional water under short-term contracts in order to address its existing water deficit. In order to ensure a water supply connection to its project, Squiretown agreed to pay the cost of any such short-term contract to the extent required for capacity needed for its project.

The study of the sewer system was designed to identify inflow and infiltration problems believed to have contributed to average flows exceeding eighty percent of the permitted flow capacity of the Township treatment works in spring of 2011 following heavy rains. Pursuant to the MOU, Squiretown agreed

A-0528-15T3

to perform, at its own cost, a video inspection of the sanitary sewer lines downstream of its property to identify any improvements necessary to accommodate the anticipated wastewater flows from its development and to assume responsibility for its pro rata share of such improvements in accordance with the Municipal Land Use Law. Squiretown also agreed to pay its share of the estimated costs of the sewer system study, slightly over $100,000. Squiretown's agreement to fund the study was "premised upon the actual sewer connection fees for the affordable units . . . being paid out of Livingston's Affordable Housing Trust Fund."[2]

On August 6, 2014, sixteen months after receipt of site plan approval, Squiretown submitted its application for water and sewer permits to the Township.[3] Twelve days later, the

---

[2] In the re-zoning process to implement its builder's remedy, Squiretown sought zoning ordinance exemptions from any development fees for its affordable units, including water and sewer connection fees. The special master, however, endorsed Livingston's proposal to exempt the affordable units from development application and escrow fees, but not from water and sewer connection fees. The court-approved ordinance re-zoning Squiretown's property thus provides a twenty percent reduction in development application and escrow fees but does not exempt any of the units from water and sewer connection fees.

[3] Although difficult to tell from the record, it does not appear as if Squiretown tendered its payment for the permits when it submitted its application.

Township Council introduced Ordinances 18-2014 and 19-2014, raising sewer and water connection fees.

Ordinance 18-2014 increased the fee for a sewer connection permit to $3821 from $2500 and implemented an inspection fee of $87 per unit. Ordinance 19-2014 implemented a new water connection fee of $942 per unit and increased the inspection fee from $75 to $83 per unit. Both ordinances reflected that the increases in the permit fees had been recommended by a certified public accounting firm retained by the Township, which had "performed a study of the capital costs and interest on debt service together with the number of equivalent users as of December 31, 2013," and was authorized by N.J.S.A. 40A:26A-11 as to the sewer connection fee and N.J.S.A. 40A:31-11 as to the water connection fee. The ordinances also provided that the fees would be recalculated at the end of each budget year pursuant to those statutes and could be reset by ordinance after public hearing on a yearly basis. The parties agree that, notwithstanding the statutory requirement that the fees be recomputed annually, Livingston had not recalculated its sewer connection fee since 2001. The last time it recalculated its water fee was 1979.

Squiretown appeared at the public hearing on the ordinances, objecting to the new fees and requesting that its

development be exempted from the increases.  The ordinances were adopted by a unanimous vote of the Council at its meeting on December 1, 2014.

In January 2015, Squiretown filed a complaint in lieu of prerogative writs challenging the ordinances.  Squiretown alleged the public notice was defective; that the ordinances were "arbitrary, capricious and/or unreasonable in light of the substantial and burdensome increases" in the connection fees and "because the increases . . . were not predicated on the Township's costs in operating the systems"; that the increases do "not comply with the statutory criteria set forth in the Municipal Sewerage and Water Supply Acts"; that the increases "constitute an unnecessary cost-generating feature in violation of the Mount Laurel doctrine and [Fair Housing Act and] "unfairly target[s]" Squiretown's project "right when [Squiretown] is near the finish line of having all necessary development approvals"; that the Township's failure to disclose its anticipated increase in the connection fees during the negotiations over the MOU, and when Squiretown agreed to contribute to the sewer study and expend its own funds to complete a video inspection of the downstream sewer lines, "constitutes a breach of its implied duty of good-faith and fair dealing" and "represent[s] continuous bad-faith conduct to

increase costs for this Project in hopes of its failure"; and finally that the Township's transfer of "surplus funds of $850,000 in 2011 and/or 2012 . . . from the sewer and water utility funds to the general fund for tax appeals" violated the New Jersey Local Budget Law. The complaint demanded judgment "reversing the passage of the Ordinances that amended the sewer and water connection fee provisions of the Township Code, or in the alternative, grandfathering [Squiretown's] Project from the Ordinances so as to not be subject to the increased connection fees."

Before Livingston filed its answer in the ordinance challenge, Squiretown filed a motion in aid of litigant's rights in the Mount Laurel litigation, alleging the ordinances as applied to its project violated the court's 2010 builder's remedy order and the 2014 order approving the MOU. Squiretown asked the court to void the ordinances or exempt it from having to pay the increased permit fees. Squiretown also sought to consolidate the Mount Laurel case with its recently filed ordinance challenge. After hearing argument on the return date, the court consolidated the two cases and granted Squiretown's motion in aid of litigant's rights.

In a decision read into the record, the judge rejected the Township's argument that it was entitled to discovery and a

plenary hearing on the validity of the ordinances. Instead, he found the case "certainly ripe for the entry of an order in aid of litigant's rights." Noting that "[t]he builder's remedy order required the Township to remove any unnecessary cost generative features," the judge found "nothing punitive about Squiretown seeking the benefit of its bargain and to have the ordinances for the sewer and water connections at the price that they reasonably bargained for." The judge further found that "there is a strong argument that the sudden and coincidental increase is an unnecessary cost generative feature in contravention of the mantra of the affordable housing laws."

Accepting Squiretown's arguments that: 1) its project was court ordered to address the Township's unmet affordable housing obligations; 2) "Squiretown had to have spent hundreds of thousands of dollars to prosecute the affordable housing litigation"; 3) site plan approval was granted in April 2013, nearly twenty months prior to the increase in connection fees; 4) Squiretown entered into an MOU with the Township "following mediation directly related to water and sewer" and approved by the court; and 5) Squiretown "has been delayed in obtaining the only outstanding permits, water and sewer, due to the Township's failure to properly maintain its systems," the judge found "more

than enough justification to have grandfathered Squiretown from the dramatic increase in connection fees."

The judge found that "for Squiretown's fair payment toward Livingston's existing water and sewer system to go from $456,000 to $913,000 in one day strikes this court, not only as unfair, but the timing would lead this court to believe that this was targeted to deter Squiretown in their pursuit of their builder's remedy under the fair housing laws." He added that Livingston's failure to advise either Squiretown or the special master during the negotiations over the MOU that the Township intended to increase the connection fees, "despite the fact that they already had knowledge that they intended to do so" and refused to mediate the increases, "is a strong argument that the Township acted in bad faith and in contravention of the MOU order." The judge concluded upon review of "the totality of the circumstances" that it "agree[d] with the arguments set forth by Squiretown" and thus declared the ordinances increasing the water and sewer connection fees "invalid as applied to Squiretown."

On Squiretown's application, the court subsequently dismissed its ordinance challenge without prejudice, as the order granting the motion in aid of litigant's right rendered the relief sought in that action moot. This appeal followed.

9

Livingston argues that: the matter should be remanded "for appropriate proceedings to develop a meaningful factual record prior to any judicial determinations as to the validity of the ordinances"; "the trial court incorrectly determined that the updated utility service connection fees represented impermissible cost-generative features as applied to development providing affordable housing"; and the court erred in exempting Squiretown from the effect of the ordinances. Squiretown counters that "[t]he trial court did not abuse its discretion in deciding the motion in aid of litigant's rights on the record before it."

It is axiomatic that a municipal ordinance adopted pursuant to authority delegated by statute bears a presumption of validity. Dial, Inc. v. City of Passaic, 443 N.J. Super. 492, 502-03 (App. Div. 2016). Although "[t]he presumption is not an irrebutable one, . . . it places a heavy burden on the party seeking to overturn the ordinance." N.J. Shore Builders Ass'n v. Twp. of Jackson, 199 N.J. 38, 55 (2009) (internal quotation omitted). The ordinances at issue here were adopted pursuant to N.J.S.A. 40A:26A-11 and N.J.S.A. 40A:31-11, which expressly permit a municipality to impose a connection or tapping fee on the owner or occupant of property for connecting the property to a sewerage or water supply system and require those fees be

completed at the end of each budget year.  Accordingly, there can be no doubt that both ordinances are entitled to a presumption of validity, having been adopted pursuant to specific authority delegated by the Legislature.  See Dial, supra, 443 N.J. Super. at 502-03; cf. Meglino v. Twp. Comm. of Eagleswood, 103 N.J. 144, 152 (1986) (noting the limited role courts have in reviewing municipal rates for utility services).

It is also well established that "an otherwise valid fee imposed for the issuance of a license or permit constitutes an invalid tax if its primary purpose is to raise revenue."  N.J. Shore Builders Ass'n, supra, 199 N.J. at 60.  In its ordinance challenge, Squiretown alleged the ordinances were arbitrary, capricious and unreasonable because the increases were not predicated on the costs of operating the sewerage and water supply systems and  did "not comply with the statutory criteria set forth in the Municipal Sewerage and Water Supply Acts."

If in fact the ordinances do not comply with the statutory criteria, the proofs should not be difficult as both statutes set forth a precise formula under which the fees are to be calculated to ensure they do not exceed the actual cost of the physical connection plus an amount representing "a fair payment" towards the cost of the system.  See N.J.S.A. 40A:26A-11; N.J.S.A. 40A:31-11.  Squiretown was not, however, ever put to

the task of proving its allegations that the connection fees were improperly computed and excessive before the trial court ruled the ordinances invalid as applied to its project.

Although an "as applied" challenge to the ordinances is certainly possible, Squiretown was not put to those proofs either. The Court has held that an ordinance that operates reasonably in some circumstances but unreasonably in others is not void, but enforceable "except where in the particular circumstances its operation would be unreasonable and oppressive." Harvard Enters., Inc. v. Bd. of Adjustment, 56 N.J. 362, 368 (1970). "The determination of such an issue depends upon an evaluation of the proven facts within the context of applicable legal principles. The total factual setting must be evaluated in each case, and if the issue be in doubt, the ordinance must be upheld." Id. at 369.

We perceive that an "as applied" challenge could be difficult here because the connection fee statutes at issue require that the charges "shall be uniform within each class of users" and are designed to recover the capital costs of building the systems spread fairly across all users hooking into them. See N.J.S.A. 40A:26A-11; N.J.S.A. 40A:31-11; cf. 612 Assocs., L.L.C. v. N. Bergen Mun. Utils. Auth., 215 N.J. 3, 21 (2013) (discussing the legislative intent underlying the imposition of

connection fees under the nearly identical provisions of the Sewerage Authorities Law, N.J.S.A. 40:14A-8(b), and the Municipal and County Utilities Authorities Law, N.J.S.A. 40:14B-22).

Because "connection fees must be calculated to effect a fair and reasonable contribution toward the costs of the system by all users," 612 Assocs., L.L.C., supra, 215 N.J. at 21, exempting some users would not further the legislative intent in establishing the connection fees.[4]  If, however, Squiretown were able to prove that the increases unduly increased the cost of development so as to affect its ability to profitably market the units, see Toll Bros., Inc. v. Twp. of W. Windsor, 303 N.J. Super. 518, 541-42 (Law Div. 1996), aff'd o.b., 334 N.J. Super. 109 (App. Div. 2000), aff'd, 173 N.J. 502 (2002), we assume, without deciding, that it might be able to assert a viable "as applied" challenge to the ordinances in the context of its inclusionary development project.

In any event, it is clear that an "as applied" challenge would require a detailed factual analysis of all the circumstances underlying the enactment of the ordinances and

---

[4] We surmise such considerations may have entered into the special master's opinion as to the reasonableness of charging water and sewer connection fees for all units, including the low and moderate income units.

A-0528-15T3

their application to Squiretown's inclusionary project.  As there was no attempt by Squiretown to create the necessary evidentiary record, it is not possible to assess whether Squiretown could have succeeded on its ordinance claims, which the court determined were made moot by its ruling on Squiretown's motion in aid of litigant's rights, as affording the developer the same relief.

Accordingly, we turn to consider Livingston's claim that the trial court permitted Squiretown to circumvent the requirements of an "as applied" challenge to the ordinances by granting it relief under Rule 1:10-3 in the Mount Laurel suit.

Public entities, like other parties, are not free to ignore or violate court orders.  In re N.J.A.C. 5:96 & 5:97, 221 N.J. 1, 19 (2015).  Although a party seeking to compel compliance with a court order need not prove its adversary was willful or contumacious, ibid., the law is clear that the scope of relief "is limited to remediation of the violation of a court order," Abbott v. Burke, 206 N.J. 332, 371 (2011) (Abbott XXI).

The trial court rested its order exempting Squiretown from the ordinances increasing fees for all new connections to the sewerage and water supply systems on Livingston's violation of the 2010 builder's remedy order and the 2014 order approving the MOU.  Turning first to the more recent order, Squiretown nowhere

identifies any specific provision of that order it claims the Township has violated.[5] Instead, it claims more generally that the Township's failure to disclose its plan to increase the connection fees during the negotiation of that order constituted bad faith.

Assuming that fact to be true for purposes of argument,[6] Squiretown cites no authority that would permit a court to grant relief in aid of litigant's rights in such circumstances, and our research has not revealed any.[7] Although there may be other

---

[5] Before the trial court, Squiretown argued the Township violated the provision of the MOU which states "that upon meeting certain conditions contained [in the NJDEP Water Agreement], Livingston will be permitted to consent to, and NJDEP will process, water supply connection applications for Plaintiff's projects." Although Livingston argued its execution of Squiretown's application would be contrary to the Water Agreement and DEP regulations, the court did not undertake any inquiry into the validity of that claim. See State Dep't of Envtl. Prot. v. Mazza & Sons, Inc., 406 N.J. Super. 13, 29 (App. Div. 2009) (noting that if there is a contested issue regarding the defendant's ability to comply with an order, "the trial court must conduct an evidentiary hearing to resolve the factual dispute"). The court's order to the Township to endorse the application is not before us.

[6] The only support for that allegation in the record is a statement by an "unidentified speaker" in an excerpt of an uncertified transcript of the public hearing on the ordinance.

[7] Indeed, the claim made to the trial court, that Squiretown agreed to contribute $100,000 to the cost of the sewer study "in part, because the Township agreed to pay" the roughly equivalent sum by assuming the $2500 connection fee for each of the forty-four affordable units from its Affordable Housing Trust Fund,

(continued)

avenues to address such wrongdoing, Squiretown, for example, alleged in its ordinance challenge that the conduct breached the Township's implied obligation of good faith and fair dealing, see Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005), its failure to identify a specific provision of the MOU order the Township violated is fatal to its claim for relief under Rule 1:10-3, see Abbott v. Burke, 170 N.J. 537, 564-65 (2002) (Abbott VIII) (LaVecchia, J., concurring in part and dissenting in part) (noting a litigant must show there is a "specific and unequivocal" order in place to support relief under Rule 1:10-3).

Accordingly, we turn to consider whether the trial court's order could be upheld on its alternate ground, that is, violation of the provision of the builder's remedy order relating to "unnecessary cost-generative features." Paragraph eight of the interlocutory order of October 2010, granting Squiretown a builder's remedy provides:

> Squiretown shall prepare and submit to the Special Master and counsel for [Livingston] a draft zoning ordinance with

---

(continued)
does not appear to support its argument. If anything, the increased connection fee would appear to result in the Township, not Squiretown, having received less than equivalent value in that exchange.

> provisions intended to allow the development of the Squiretown Property in a manner that is consistent with this Order, the report of the Special Master as modified by her testimony at trial and the concept plan as revised pursuant to the procedures in Paragraph 6 of this Order. The zoning ordinance shall include provisions for removing unnecessary cost generative features in connection with development of the Squiretown Property. Squiretown and [Livingston], with the assistance of the Special Master as needed, shall endeavor in good faith to reach agreement on the provisions of the zoning ordinance; provided however, that [Livingston's] obligation to adopt such an ordinance is not conditioned on the parties reaching such an agreement.

The parties do not dispute that Squiretown sought zoning ordinance provisions exempting the affordable units from any development-related fees, including fees for sewer and water connections. Livingston apparently opposed that request and countered with a proposal to discount Squiretown's application and review fees by twenty percent, thus, in effect, exempting the affordable units from such fees. The Township, however, opposed any exemption for water and sewer connection fees.

The special master agreed with Livingston, opining that "it is appropriate to eliminate development application and review (escrow) fees for the low and moderate income units, but it is not unreasonable to require that all units be charged for sewer and water connection fees." Livingston subsequently adopted

17

ordinances re-zoning Squiretown's property and providing for revised development regulations and fees, which ordinances were approved by the court in the final judgment of compliance and repose entered in June 2011 and affirmed by this court.[8]

Accordingly, assuming that the builder's remedy order, which is specific to "the zoning ordinance," encompasses Ordinances 18-2014 and 19-2014, it is not self-evident as to how water and sewer connection fees that were not considered unnecessary cost-generative features in the judgment of repose became so when the fees were increased, allegedly in accordance with a legislatively mandated formula. It is clear to us that a finding in this regard was not possible on this record and would not be possible without an evidentiary hearing in which the ordinances are accorded the presumption of validity as required by established law. See Dial, supra, 443 N.J. Super. at 503; see also Meglino, supra, 103 N.J. at 152.

Accordingly, we vacate the order in aid of litigant's rights and remand the matter for discovery and an evidentiary hearing. In doing so, we express no opinion on the outcome in

---

[8] The Township's agreement to pay the sewer connection fees for the affordable units out of its Affordable Housing Trust Fund, in exchange for Squiretown's contribution to the sewer study, was made two-and-a-half years later as part of the MOU.

A-0528-15T3

this case. Squiretown maintains that the increase in the connection and inspection fees for water and sewer service will drive its costs for those items from $456,500 to $913,808, essentially doubling them. The amount and timing of those increases could support Squiretown's argument that the charges were an unnecessary cost-generative feature implemented by the Township in bad faith to deter it from pursuing its builder's remedy.[9] The trial court, however, was not free to adopt Squiretown's arguments in the absence of any proof of its allegations.

We expressly reject Squiretown's argument that whether "the increased [connection] fees impaired the viability of the development project," whether they were "comparable to [those in] other jurisdictions in the surrounding area," or whether they were calculated in accord with statutory requirements, is "irrelevant to whether the Township's conduct violated the Builder's Remedy Order and the MOU Order" and that it "did not need to address any of those issues." Those issues are highly relevant and precisely the ones Squiretown must address on remand to establish any entitlement to relief.

---

[9] We do not, however, understand the trial court's finding that Squiretown "bargained for" the prices of connection fees the Legislature requires be adjusted each budget year in accordance with the statutory formula.

In our view, unless Squiretown can prove the increased fees contained in Ordinances 18-2014 and 19-2014 were not calculated in accordance with statute, this is an "as applied" challenge to enforcement of those ordinances, in which Squiretown can assert that the increases are an unnecessary cost-generative feature. See Urban League v. Mahwah, 207 N.J. Super. 169, 232 (Law Div. 1984). Resolution of Squiretown's claims will require a detailed factual analysis of all the circumstances underlying the enactment of the ordinances and their application to Squiretown's inclusionary project.

We vacate the order in aid of litigant's rights and remand for discovery and an evidentiary hearing.[10] We do not retain jurisdiction.

Vacated and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[10] On remand, Squiretown is, of course, free to move to reinstate the claims dismissed without prejudice in its ordinance challenge.